### ADAM CARMON *v.* COMMISSIONER OF CORRECTION
### (AC 28397)

Flynn, C. J., and Gruendel and Harper, Js.

Argued March 12—officially released May 19, 2009

*Paul R. Kraus*, special public defender, for the appellant (petitioner).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Adam Carmon, appeals from the judgment of the habeas court denying his second petition for a writ of habeas corpus. The habeas court granted the petition for certification to appeal. The petitioner claims that the court improperly concluded that he was not deprived of the effective assistance of trial and prior habeas counsel. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. Following a 1995 jury trial, the petitioner was convicted of murder, assault in the first degree and carrying a pistol without a permit. He was sentenced to a total effective term of eighty-five years incarceration. Following a direct appeal, the judgment of conviction was affirmed by this court. *State* v. *Carmon*, 47 Conn. App. 813, 709 A.2d 7, cert. denied, 244 Conn. 918, 714 A.2d 7 (1998).

The opinion of this court set forth the following facts underlying the conviction: "On the night of February 3, 1994, Charlene Troutman was in the living room of her apartment located on Orchard Street in New Haven waiting for a taxicab. With her, among others, was her seven month old granddaughter. Shots fired from the street passed through the living room window killing the granddaughter and leaving Troutman permanently paralyzed. At the time the shots were fired, Jaime Stanley and Raymond Jones were [in a vehicle] stopped at a traffic light near Troutman's apartment and saw a man firing into the apartment. As the shooter ran away, both Stanley and Jones saw his face. Both witnesses identified the [petitioner] during trial as the person who had fired the shots through the window of Troutman's apartment." Id., 815.

Following his conviction, the petitioner filed a petition for a writ of habeas corpus claiming that his trial counsel, Richard Silverstein, had rendered ineffective assistance. In the prior habeas proceeding, the petitioner was represented by Richard Smith. The court rejected the petitioner's claims and denied the petition. The court granted certification to appeal, and an appeal was filed with this court on December 5, 2002. On March 25, 2003, the petitioner's appointed appellate counsel was permitted to withdraw her appearance upon the

filing of an *Anders*[1] brief. Thereafter, the petitioner failed to file an appellate brief, and this court dismissed his appeal.

The petitioner filed his second petition for a writ of habeas corpus in 2003, claiming again that his trial counsel had rendered ineffective assistance. In the second petition, he included allegations of deficient performance that had not been claimed in his first petition.[2] The petitioner alleged that Silverstein rendered ineffective assistance because he failed to investigate and to introduce fingerprint evidence taken from the storm window at the crime scene and from an empty ammunition cartridge box found near the crime scene. He also alleged that Smith rendered ineffective assistance at the habeas trial because Smith failed to raise the claim that Silverstein's failure to pursue the fingerprint evidence denied the petitioner the effective assistance of counsel at the underlying criminal trial.

A habeas trial was held on February 15 and May 3, 2006. The parties filed posttrial briefs, and the habeas court issued its memorandum of decision on November 14, 2006, denying the petition for a writ of habeas corpus. This appeal followed.

Facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law

---

[1] Under *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." Such a request must be "accompanied by a brief referring to anything in the record that might arguably support the appeal." Id.

[2] The petitioner also raised claims that previously had been raised and determined in the prior habeas proceeding. The habeas court in the present proceeding identified those claims and stated that it would not revisit the issues that already had been resolved.

and fact to which we accord plenary review unfettered by the clearly erroneous standard. *Minnifield* v. *Commissioner of Correction*, 111 Conn. App. 776, 778–79, 960 A.2d 1117 (2008), cert. denied, 290 Conn. 914, 965 A.2d 553 (2009).

In *Lozada* v. *Warden*, 223 Conn. 834, 842–43, 613 A.2d 818 (1992), our Supreme Court decided that to prevail, a habeas petitioner must prove both (1) that his appointed habeas counsel was ineffective and (2) that his trial counsel was ineffective, and that the habeas petition is inextricably interwoven with the merits of the original judgment by challenging the very fabric of the conviction that led to the confinement.

In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court required both (1) that a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the sixth amendment to the United States constitution and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. See *Minnifield* v. *Commissioner of Correction*, supra, 111 Conn. App. 779–80.

On appeal, the petitioner claims that the habeas court improperly concluded that Silverstein's failure to investigate more fully the fingerprint evidence with respect to the storm window and the cartridge box, and to introduce that evidence at the criminal trial, did not constitute ineffective assistance. Specifically, he argues that all of the fingerprint evidence was favorable to the petitioner because none of his fingerprints were identified on the window or the box. The petitioner further argues that because Stanley testified that the shooter was so close to the window, a juror reasonably could conclude that it was more likely than not that

the shooter actually touched it. Further, according to the petitioner, the failure of habeas counsel to raise those deficiencies of trial counsel in the first habeas proceeding likewise constituted ineffective assistance.

As indicated in the habeas court's memorandum of decision, the petitioner produced two witnesses in support of his claim with respect to the fingerprint evidence at the habeas trial. James Stephenson, a firearms and tool mark examiner at the state forensic science laboratory, testified that he was a detective with the New Haven police department's bureau of identification at the time of the shootings in February, 1994. The morning after the incident, he had been assigned to the crime scene and had processed latent fingerprints on the window at the multifamily building where the shootings had occurred and on an empty cartridge box found near that building.[3] Although he was able to process fingerprints on both items, Stephenson testified that he did not know whether those fingerprints were identifiable. He further testified that he had no independent knowledge that the window actually had been touched by the shooter.

The second witness, George Shelton, Jr., indicated that he was a latent fingerprint examiner with the New Haven department of police service. Shelton testified that in 2005, his supervisor requested that he compare fingerprint impressions on file in the criminal case with the petitioner's fingerprints. With respect to the storm window, Shelton testified that none of the fingerprints matched those of the petitioner. On cross-examination, he testified that none of the fingerprints matched any of the several individuals whose names had been provided by the petitioner's counsel as possible suspects in the shootings.

---

[3] The shootings had occurred at 810 Orchard Street. The parking lot of a church was located next to 810 Orchard Street. The church itself was located at 806 Orchard Street, the next building beyond the parking lot. The cartridge box was located in front of the church.

With respect to the cartridge box, Shelton testified that he had been unable to locate the latent fingerprints that had been processed by Stephenson in 1994. For that reason, he was unable to indicate whether those fingerprints had been identifiable and, if so, whether they matched the fingerprints of the petitioner or the other individuals named by the petitioner's counsel. There was no testimony as to when the fingerprints had last been seen, and the petitioner argued that the absence of those fingerprints warranted an inference that the evidence would have been favorable to him.

On the basis of that testimony, the habeas court made the following factual findings and conclusions: (1) no evidence had been presented to support a finding that the fingerprint evidence had been intentionally destroyed; (2) the court had no reason to conclude that the New Haven police department was under any obligation to preserve evidence relating to the shootings when the petitioner's appeal rights had been either exhausted or waived in the criminal case and the first habeas proceeding; (3) unpreserved, untested evidence is not presumed to be exculpatory; (4) the cartridge box was not found directly at the crime scene, and there was no other evidence to connect that box with the shooter; (5) even if the fingerprints from the box had been preserved, identified and found not to match those of the petitioner, it is sheer speculation that a different result would have been produced; (6) there was no evidence that the shooter actually touched the storm window at the crime scene; (7) it is more likely that the fingerprints from the window were placed there by someone other than the shooter, such as a tenant or visitor to the apartment building, given the lack of evidence that the shooter actually touched the window; (8) Silverstein had visited the crime scene on several occasions and had investigated such issues as the visibility into the apartment from the street and the angle of

the bullet trajectories; and (9) the fingerprint evidence produced for the habeas trial did not establish that Silverstein was ineffective in his investigation or that the result of the criminal trial would have been different had he investigated that issue more thoroughly. Because the petitioner failed to show that his trial counsel's performance had been deficient, the habeas court concluded that his claim against Smith with respect to his representation during the first habeas proceeding likewise failed.

We conclude that the facts as found, which are fully supported by the record, do not constitute a violation of the petitioner's constitutional right to effective assistance of counsel. The habeas court properly determined that the petitioner failed to show that the performance of his trial counsel, Silverstein, or his habeas counsel in the first habeas proceeding, Smith, was ineffective. The petitioner's argument that the shooter probably touched the window because he was close to it, that he left his fingerprints on that window, that those fingerprints were the ones processed by Stephenson and that the result of the criminal proceedings would have been different if the jury knew that the petitioner's fingerprints did not match those from the window is, as the habeas court found, sheer speculation.[4] Accordingly, Silverstein's failure to investigate that matter further was not deficient performance.

---

[4] "While it is incumbent on a trial counsel to conduct a prompt investigation of the case and explore all avenues leading to facts relevant to the merits of the case . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation, but by demonstrable realities. . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence." (Internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 525–26, 865 A.2d 1231 (2005).

The petitioner's argument with respect to the cartridge box is even more tenuous. That box was not found at the crime scene, and there was no evidence as to when or how it was deposited in the area of a church located near the crime scene. The box was empty, the caliber of the ammunition that had been contained in that box was unknown,[5] there was no eyewitness testimony that the shooter had been seen taking cartridges from a box, and there was no other testimony or evidence linking that box to the crime scene. The fact that the fingerprints processed from the box were no longer available for comparison with the petitioner's fingerprints twelve years after the shootings did not give rise to a presumption that the evidence would have been favorable to the petitioner. As noted by the habeas court, no evidence had been presented to show that the fingerprints from the box were intentionally destroyed. We conclude that the habeas court correctly determined that the petitioner was not entitled to an inference that the missing fingerprint evidence would have been favorable to him. "[U]npreserved, untested evidence is not presumed to be exculpatory." *Correia* v. *Rowland*, 263 Conn. 453, 474, 820 A.2d 1009 (2003). "The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner. *United States* v. *Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (petitioner could not succeed on claim of ineffective assistance of counsel because he failed to show what further investigation would have revealed and how it would have helped him) . . . ." (Citation omitted.) *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 175, 774 A.2d 148 (2001).

Because the habeas court properly concluded that the petitioner's trial counsel had not provided constitutionally ineffective assistance, the petitioner could not

---

[5] Evidence at the criminal trial established that the shooter had used a nine millimeter weapon.

prevail on his argument that his habeas counsel in the first habeas proceeding rendered ineffective assistance by failing to claim that his trial counsel's performance was deficient with respect to the investigation of the fingerprint evidence. See *Lozada* v. *Warden*, supra, 223 Conn. 842–43.

The judgment is affirmed.

In this opinion the other judges concurred.