******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ADAM CARMON *v.* COMMISSIONER
OF CORRECTION
(AC 39467)

DiPentima, C. J., and Lavine and Mullins, Js.*

*Syllabus*

The petitioner, who previously had been convicted of, inter alia, murder in
connection with a shooting incident and had filed three petitions for a
writ of habeas corpus, filed a fourth petition for a writ of habeas corpus,
claiming, inter alia, that he was denied due process. Specifically, he
claimed that the state had failed to turn over to his criminal trial counsel
a fingerprint analysis report that allegedly constituted exculpatory evi-
dence under *Brady* v. *Maryland* (373 U.S. 83), and showed that the
fingerprints of B, who had been the initial suspect in the shooting, were
on an ammunition box that had been found at a church near the location
of the shooting. The petitioner further claimed that the fingerprint analy-
sis report was newly discovered evidence that established his actual
innocence. The habeas court rendered judgment dismissing the petition
in part and denying it in part, from which the petitioner, on the granting
of certification, appealed to this court. *Held*:

1. The petitioner could not prevail on his claim that the habeas court improp-
   erly concluded that he was not denied due process as a result of the
   state's failure to turn over the fingerprint analysis report to his criminal
   trial counsel: even if the fingerprint analysis report was suppressed by
   the state, the petitioner failed to prove that it was material under *Brady*,
   as it was known that B had been in the area of the crime scene hours
   before the shooting, there was no evidence that the shooter had an
   ammunition box at the crime scene or had dropped such a box outside
   the nearby church, and there was no evidence that anyone saw the
   shooter load a weapon at or near the church; moreover, the petitioner
   was identified as the shooter by two eyewitnesses, one of whom had
   been standing approximately six feet from the shooter and had an unob-
   structed view of the shooter, there was evidence that tied the petitioner
   to the firearm that had been used in the shooting, and, therefore, the
   existence of the report, even if improperly suppressed by the state, did
   not undermine confidence in the verdict.

2. This court found unavailing the petitioner's claim that the habeas court
   improperly concluded that he failed to prove that his criminal trial
   counsel and prior habeas counsel provided ineffective assistance by
   failing to investigate or to present the fingerprint analysis report; this
   court having concluded that the petitioner failed to establish that the
   report was material, the petitioner could not establish that he was
   prejudiced by the alleged deficiency of counsel in failing to discover or
   to present the report.

3. The habeas court properly determined that the petitioner failed to establish
   his claim of actual innocence, which was based on his assertion that
   the fingerprint analysis report was newly discovered evidence that exon-
   erated him; even if the report was newly discovered evidence, it proved
   nothing more than that B's fingerprints were on an empty ammunition
   box that was located outside a church that was near the crime scene,
   and the petitioner was tied to the firearm that was used in the shooting
   by more than one of the state's witnesses, and was identified by two
   eyewitnesses to the shooting, one of whom stated that she was positive
   that B was not the shooter.

Argued September 18—officially released November 28, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Oliver, J.*; judgment
dismissing the petition in part and denying the petition
in part, from which the petitioner, on the granting of

certification, appealed to this court. *Affirmed.*

*Erica A. Barber*, assigned counsel, for the appellant (petitioner).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Grayson Colt Holmes*, former special deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

MULLINS, J. The petitioner, Adam Carmon, appeals from the judgment of the habeas court, dismissing in part and denying in part, his fourth petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly concluded that he failed to establish that (1) the state had violated *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by withholding critical exculpatory evidence at the time of his criminal trial, (2) his criminal trial counsel, first habeas counsel, and second habeas counsel all had provided ineffective assistance, and (3) he was entitled to immediate release on the basis of actual innocence. We affirm the judgment of the habeas court.

The opinion of this court from the petitioner's direct appeal set forth the following facts underlying the petitioner's conviction: "On the night of February 3, 1994, Charlene Troutman was in the living room of her apartment located on Orchard Street in New Haven waiting for a taxicab. With her, among others, was her seven month old granddaughter. Shots fired from the street passed through the living room window killing the granddaughter and leaving Troutman permanently paralyzed. At the time the shots were fired, Jaime Stanley and Raymond Jones were [in a vehicle] stopped at a traffic light near Troutman's apartment and saw a man firing into the apartment. As the shooter ran away, both Stanley and Jones saw his face. Both witnesses identified the [petitioner] during trial as the person who had fired the shots through the window of Troutman's apartment." *State* v. *Carmon*, 47 Conn. App. 813, 815, 709 A.2d 7, cert. denied, 244 Conn. 918, 714 A.2d 7 (1998).

On the basis of this evidence, following a guilty verdict by the jury, the trial court rendered judgment of conviction against the petitioner for murder, assault in the first degree and carrying a pistol without a permit. Id., 814–15. The court then sentenced the petitioner to a total effective term of eighty-five years incarceration. Following a direct appeal, this court affirmed the judgment of conviction, and our Supreme Court denied the petition for certification to appeal. *State* v. *Carmon*, 244 Conn. 918, 714 A.2d 7 (1998).

Thereafter, the petitioner filed a petition for a writ of habeas corpus claiming that his criminal trial counsel, Richard Silverstein, as well as his appellate counsel, Suzanne Zitser, had provided ineffective assistance; the habeas court denied that petition, but granted the petition for certification to appeal. See *Carmon* v. *Commissioner of Correction*, 114 Conn. App. 484, 486, 969 A.2d 854, cert. denied, 293 Conn. 906, 978 A.2d 1108 (2009). The petitioner filed an appeal, which we dismissed after he failed to file an appellate brief. Id., 486–87.

The petitioner then filed a second petition for a writ

of habeas corpus, claiming again that his criminal trial counsel had provided ineffective assistance. In this second petition, he included allegations of deficient performance that had not been alleged in his first petition. Id., 487. Specifically, the petitioner alleged, in relevant part, that Silverstein had performed deficiently because he had failed to investigate and to introduce fingerprint evidence taken from a storm window at the crime scene and from an empty ammunition cartridge box found near the crime scene. Id.

Following a habeas trial, the court issued a memorandum of decision denying the petition for a writ of habeas corpus. Id. We affirmed the judgment of the habeas court on appeal, and our Supreme Court denied the petition for certification to appeal. *Carmon* v. *Commissioner of Correction*, 293 Conn. 906, 978 A.2d 1108 (2009).

Then, the petitioner filed a third petition for a writ of habeas corpus, claiming that his criminal trial counsel, first habeas counsel, and second habeas counsel all had provided ineffective assistance. See *Carmon* v. *Commissioner of Correction*, 148 Conn. App. 780, 782, 87 A.3d 595 (2014). He also alleged that several material witnesses had given false testimony during his criminal trial, that the state had withheld exculpatory evidence, that his conviction was rendered on the basis of prosecutorial impropriety, and that he is actually innocent. Id. When the petitioner failed to respond to the request by the respondent, the Commissioner of Correction, for a more specific statement, the habeas court defaulted the petitioner and rendered judgment dismissing the petitioner's third habeas case. Id., 784. We affirmed that judgment on appeal. Id., 788.

During the pendency of the petitioner's appeal from the judgment of dismissal of his third habeas petition, however, the petitioner filed the present habeas petition, his fourth. In this petition, the petitioner alleged: as to count one, his criminal trial counsel, and his first and second habeas counsel all had provided ineffective assistance;[2] as to count two, the state knew or should have known that the testimony of several of its witnesses was false; as to count three, the state violated his right to due process by permitting the witnesses to provide false testimony; as to count four, the state violated *Brady* v. *Maryland*, supra, 373 U.S. 83, by not turning over exculpatory evidence; as to count five, the prosecutor committed impropriety, which was based on the allegations in counts two through four of the petition; and, as to count six, actual innocence.

The respondent asserted several special defenses: (1) as to count one, the respondent asserted that the fourth petition was successive as to the petitioner's criminal trial counsel and first habeas counsel, and that the petitioner failed to state a claim as to his second habeas counsel; (2) as to counts two through five, the petitioner

had procedurally defaulted on those counts; and, as to count six, the petition was successive.[3] The petitioner responded, inter alia, that there was newly discovered evidence in the form of a fingerprint analysis report that proved that the fingerprints on the ammunition box found near the crime scene belonged to Arthur Brantley, an early suspect in this shooting. The petitioner contended that this report had not been disclosed by the prosecution at the time of his last petition that was decided on the merits, namely, the second petition for a writ of habeas corpus.

After a trial, the habeas court determined that the allegations in count one, which were that his trial counsel, and his first and second habeas counsel had provided ineffective assistance by failing to investigate and to call certain expert witnesses, were abandoned due to inadequate briefing. Additionally, the court found that those allegations were "without factual foundation and support in the record." The court further found that the petitioner had failed to prove that the failure of his criminal trial counsel to introduce the fingerprint analysis report was prejudicial to the petitioner. In addition, the court found that neither the petitioner's first nor his second habeas counsel had the fingerprint analysis report, but that the petitioner failed to establish that he was prejudiced by their failure to obtain and to present this evidence because it was not material. Accordingly, the court rejected count one of the fourth habeas petition.

As to counts two and three of the fourth petition, regarding the allegations of perjured testimony, the court found that the petitioner was procedurally defaulted from raising these claims, and it dismissed them. As to count four, alleging a *Brady* violation, the court found that the petitioner had failed to prove that the state had not disclosed, at the time of his criminal trial, the fingerprint analysis report. The court also found that this evidence, even if not disclosed, was not material. As to count five of the fourth petition, the court rejected the allegations in that count on the basis of its rejection of counts two through four, which formed the basis of the alleged prosecutorial impropriety allegation in count five. As to count six, the actual innocence claim, the court concluded that the fingerprint analysis report was not newly discovered evidence because the petitioner did not establish that his criminal trial counsel did not have the report at the time of trial. Alternatively, the court found, even if it were to assume arguendo that this evidence was newly discovered, on the basis of the "credible evidence in the record and reasonable inferences to be drawn therefrom . . . the evidence of Brantley's fingerprints on [the] cartridge box [did] not render the petitioner's conviction unreliable and [that evidence, if presented, was] not likely to have changed the outcome of his trial."

In sum, the habeas court dismissed counts two and three, and, otherwise, denied the remaining counts in the petitioner's fourth petition for a writ of habeas corpus. Thereafter, the habeas court granted the petition for certification to appeal. This appeal followed.

We next set forth additional facts that are relevant to the petitioner's claims on appeal. During the petitioner's criminal trial, there was testimony that Troutman's son owed money to Brantley, a drug dealer. According to Brantley's testimony, Brantley and Troutman's son had a confrontation on the day of the shooting when Brantley tried to collect money that Troutman's son owed to him for drugs. Several hours after the fight, the shooting occurred. The police initially focused on Brantley as a suspect.

During the trial on the petitioner's second petition for a writ of habeas corpus, the following relevant testimony was provided: "James Stephenson, a firearms and tool mark examiner at the state forensic science laboratory, testified that he was a detective with the New Haven police department's bureau of identification at the time of the shootings in February, 1994. The morning after the incident, he had been assigned to the crime scene and had processed latent fingerprints . . . on an empty cartridge box found near that building.[4] Although he was able to process fingerprints . . . Stephenson testified that he did not know whether those fingerprints were identifiable. . . .

"The second witness, George Shelton, Jr., indicated that he was a latent fingerprint examiner with the New Haven department of police service. Shelton testified that in 2005, his supervisor requested that he compare fingerprint impressions on file in the criminal case with the petitioner's fingerprints. . . . With respect to the cartridge box, Shelton testified that he had been unable to locate the latent fingerprints [from the cartridge box] that had been processed by Stephenson in 1994. For that reason, he was unable to indicate whether those fingerprints had been identifiable and, if so, whether they matched the fingerprints of the petitioner or the other individuals . . . . There was no testimony as to when the fingerprints had last been seen . . . ." (Footnote in original.) *Carmon* v. *Commissioner of Correction*, supra, 114 Conn. App. 489–90.

During the current habeas proceeding, the following additional testimony and evidence was presented. In 2009, the petitioner filed a freedom of information request with the New Haven Police Department. In response to that request, the Office of the Corporation Counsel for the City of New Haven provided the petitioner's attorney with, among other things, a police incident report, dated February 11, 1994, and signed by Detective Robert Benson (fingerprint analysis report). In that fingerprint analysis report, which had not been

presented to the jury at the petitioner's criminal trial, Benson indicated that, on February 4, 1994, he "examined the latent lifts [taken by Stephenson from the ammunition box] and compared them to the known inked impressions of Arthur Brantley . . . and the followin[g] identification was effected: a latent [print] located on a side of the [box] was identified as having been made by the right index finger of Arthur Brantley, and the . . . lift from the side of the ammunition [box]. The latent lift identified was found to have been made by Arthur Brantley to the exclusion of all other persons. [Detective Christopher] Grice, a certified latent print examiner, verified the identification and concurred with my findings. This report will be forward[ed] to ISU for follow-up; the latent lifts will be on file in the [i]dentification [u]nit. A chart that illustrates the identification will be prepared upon request from the court." Additional facts will be set forth as necessary to address fully the petitioner's claims on appeal.

I

The petitioner first claims that the "habeas court erred in concluding that [he] was not denied due process where the state withheld crucial exculpatory evidence in violation of *Brady* v. *Maryland*, [supra, 373 U.S. 83]." The petitioner argues that the state failed to turn over to his criminal trial counsel the fingerprint analysis report that demonstrated that the fingerprints on the ammunition box found in front of a neighboring church belonged to the initial suspect in this case, Brantley. The respondent counters that the habeas court properly concluded that the petitioner failed to establish that the state had not disclosed this evidence. Furthermore, the respondent argues, even if the state did fail to disclose the evidence, the petitioner did not establish that the evidence was material, such that its absence undermines confidence in the jury's verdict. Under the facts of the present case, we conclude that even if we were to assume, without deciding, that the fingerprint analysis report was suppressed by the state and that the report would have been admissible in the criminal trial, this evidence was not material under *Brady*.

"The law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established. The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution. [Id., 86]; *State* v. *Simms*, 201 Conn. 395, 405 [and] n.8, 518 A.2d 35 (1986). In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State* v. *Guilbert*, 306 Conn. 218, 271–72, 49 A.3d 705 (2012).

"Under the last *Brady* prong, the prejudice that [a]

defendant suffered as a result of the impropriety must have been material to the case, such that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (Internal quotation marks omitted.) *State* v. *Ortiz*, 280 Conn. 686, 717, 911 A.2d 1055 (2006). "[T]he test for materiality under *Brady* and the test for prejudice under *Strickland* [for ineffective assistance of counsel] are the same . . . ." (Internal quotation marks omitted.) *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 704, 159 A.3d 1112 (2017).

"[A] trial court's determination as to materiality under *Brady* presents a mixed question of law and fact subject to plenary review, with the underlying historical facts subject to review for clear error." *State* v. *Ortiz*, supra, 280 Conn. 720. "Because the [habeas] trial judge had the opportunity, however, to observe firsthand the proceedings at [the habeas] trial, including the cross-examination of [witnesses], our independent review nevertheless is informed by [the habeas judge's] assessment of the impact of the *Brady* violation, [if any] and we find persuasive the Second Circuit Court of Appeal's approach of engaging in independent review, yet giving 'great weight' to the [habeas] trial judge's conclusion as to the effect of nondisclosure on the outcome of the [criminal] trial . . . ." Id., 721–22, quoting *United States* v. *Zagari*, 111 F.3d 307, 320 (2d Cir.), cert. denied sub nom. *Shay* v. *United States*, 522 U.S. 988, 118 S. Ct. 455, 139 L. Ed. 2d 390 (1997); see also *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 262–64, 112 A.3d 1 (2015).

As to materiality, the habeas court found, inter alia, that, in the absence of this evidence, the petitioner, nonetheless, had received a fair trial. The court pointed to Silverstein's testimony at the habeas trial that, during the petitioner's criminal trial, he was using Brantley as "kind of a red herring"; (emphasis omitted); and that he was convinced that Brantley was not the shooter because of pretrial information he had received from the prosecutor. The court also stated that it recollected that Silverstein was convinced that it would have been "impossible" for Brantley to have been the shooter.

The court stated that it had conducted a "lengthy review of the entire record of two decades of litigation, including previous court decisions, trial transcripts and numerous exhibits . . . ." Furthermore, it had reviewed the "eyewitness testimony, statements from the petitioner, and . . . reasonable inferences [that could] be drawn therefrom . . . ." On the basis of this record, the habeas court concluded, in relevant part, that its confidence in the verdict was not undermined; the petitioner had received a fair trial. We agree with that assessment.

Following our own review of the record, we conclude that the petitioner has failed to prove that the fingerprint

analysis report was material. First, although Brantley had been an early suspect in the shooting, and his fingerprints were found on the ammunition box, it was known that he had been in that area hours prior to the shooting and that he engaged in a physical altercation at the crime scene. Second, there is no evidence that the shooter had with him an ammunition box at the crime scene or that the shooter had dropped or discarded such a box outside the nearby church. Third, there also was no evidence that anyone saw the shooter load a weapon while standing at or near the neighboring church. Fourth, there were two eyewitnesses to this shooting, both of whom came forward and positively identified *the petitioner* as the shooter. Fifth, the evidence at the petitioner's criminal trial demonstrated that one of those eyewitnesses, Stanley, was approximately six feet from the shooter and that she had an unobstructed view of the shooter; when she was shown a photograph of Brantley during the police investigation, she stated that she was positive that the person depicted in that photograph *was not the shooter*.

Finally, there was evidence that tied the petitioner to the firearm that had been used in the shooting. Timothy McDonald, a former member of the "Fifth Ward" gang[5] testified that the petitioner also had been a member of that gang, and that he knew the petitioner by the name "Twenty." During the criminal trial, McDonald was shown the firearm that had been used in the shooting, and he identified it as a firearm he previously had possessed. McDonald further testified that he had sold that firearm to the petitioner for $200, months before the shooting.

In addition to McDonald's testimony, another witness at the petitioner's criminal trial, Anthony Stevenson, who also had been a member of the "Fifth Ward" gang, testified that, after the shooting, the petitioner had been in possession of the firearm used in the shooting, and that the petitioner had given him the firearm to use in an unrelated crime. It was from Stevenson that the police recovered the firearm when responding to this unrelated matter.

On the basis of our independent review of the record, we agree with the habeas court that the petitioner failed to prove that the fingerprint analysis report, which demonstrated that Brantley's fingerprints were on the ammunition box found in front of a neighboring church, was material. The existence of this report, even if improperly suppressed by the state, does not undermine our confidence in the verdict. Accordingly, we conclude that the court properly denied the habeas petition on this ground.

## II

The petitioner next claims that the habeas court improperly concluded that he failed to prove that his

criminal trial counsel, and his first and second habeas counsel all had provided ineffective assistance by failing to investigate adequately the existence of the fingerprint analysis report and/or to present that report. We conclude on the basis of our analysis in part I of this opinion that even if we were to assume that the petitioner is correct that counsel were deficient for failing to uncover or to present this report, the petitioner cannot establish prejudice.

Under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation omitted; internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, supra, 316 Conn. 264–65. "[T]he test for materiality under *Brady* and the test for prejudice under *Strickland* [for ineffective assistance of counsel] are the same . . . ." Id., 266–67.

"As in the case of an alleged *Brady* violation, [i]n order to demonstrate such a fundamental unfairness or miscarriage of justice, the petitioner should be required to show that he is burdened by an unreliable conviction. . . . [T]he respective roles of the habeas court and the reviewing court are also the same under *Strickland* as they are under *Brady*. As a general matter, the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . . [W]hether those facts constituted a violation of the petitioner's rights under the sixth amendment [however] is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) Id., 265.

Because we already have concluded in part I of this opinion that the petitioner failed to establish materiality under *Brady* of the fingerprint analysis report, he cannot establish that he was prejudiced by the alleged deficiency of counsel in failing to discover and/or to present the fingerprint analysis report. See id.; see also *Breton* v. *Commissioner of Correction*, supra, 325 Conn. 704. Accordingly, the habeas court properly denied the petition on this ground.

## III

Finally, the petitioner claims that the habeas court improperly concluded that he failed to prove his claim of actual innocence, which, he contends, entitles him to immediate release.

"[T]he proper standard for evaluating a freestanding claim of actual innocence, like that of the petitioner, is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997).

"Actual innocence is not demonstrated merely by showing that there was insufficient evidence to prove guilt beyond a reasonable doubt. . . . Rather, actual innocence is demonstrated by affirmative proof that the petitioner did not commit the crime. . . . Affirmative proof of actual innocence is that which might tend to establish that the petitioner could not have committed the crime even though it is unknown who committed the crime, that a third party committed the crime or that no crime actually occurred. . . .

"Discrediting the evidence on which the conviction rested does not revive the presumption of innocence. To disturb a long settled and properly obtained judgment of conviction, and thus put the state to the task of reproving its case many years later, the petitioners must affirmatively demonstrate that they are in fact innocent. . . . Nevertheless, we have recognized that, [u]nder circumstances where new, irrefutable evidence is produced that so completely eviscerates the prosecution's case such that the state would have no evidence to go forward with upon retrial, perhaps a functional equivalent to actual innocence might credibly be claimed." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Horn* v. *Commissioner of Correction*, 321 Conn. 767, 802–803, 138 A.3d 908 (2016).

In the present case, the petitioner asserts that the fingerprint analysis report is newly discovered evidence that exonerates him from the shooting. He argues that "[n]o rational trier of fact could find proof of [his] guilt beyond a reasonable doubt." Accordingly, he argues, the habeas court erred in rejecting this claim. We conclude that even if we were to assume that the fingerprint analysis report was newly discovered evidence, we, nonetheless, would find no merit to the petitioner's claim.

The fingerprint analysis report proves that Brantley's fingerprints were on an empty ammunition box that was located outside a church that was near the crime scene. It proves nothing more than that. The petitioner was tied to the firearm that was used in the shooting by more than one of the state's witnesses. He was positively identified by two eyewitnesses to the shooting, and one of those witnesses stated that she was positive that Brantley was not the shooter. We conclude that the habeas court properly determined that the petitioner failed to establish that he was actually innocent.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The habeas court granted the petitioner certification to appeal. See General Statutes § 52-470.

[2] In his fourth habeas petition, the petitioner also had alleged in count one that appellate counsel on direct appeal had provided ineffective assistance. It appears that the petitioner did not pursue that allegation.

[3] The respondent did not pursue his defense of successive petition on any count.

[4] "The shootings had occurred at 810 Orchard Street. The parking lot of a church was located next to 810 Orchard Street. The church itself was located at 806 Orchard Street, the next building beyond the parking lot. The cartridge box was located in front of the church." *Carmon* v. *Commissioner of Correction*, supra, 114 Conn. App. 489 n.3.

[5] The Fifth Ward gang was described at the petitioner's criminal trial as a violent "drug selling gang," involved with a "lot of guns . . . ."