******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ANTONIO A. *v.* COMMISSIONER OF CORRECTION*
(AC 42466)
(AC 42618)

Moll, Suarez and DiPentima, Js.

*Syllabus*

The petitioner, who previously had been convicted of the crimes of sexual assault in the first degree and risk of injury to a child and was found to be in violation of his probation, sought, as a self-represented party, a second writ of habeas corpus using a state supplied form. Thereafter, the habeas court granted the petitioner's request the appointment of counsel, and counsel entered an appearance on the petitioner's behalf. The respondent Commissioner of Correction, pursuant to statute (§ 52-470 (d) and (e)), filed a request for an order to show cause why the second petition should be permitted to proceed when the petitioner had filed it more than two years after the judgment on his prior petition was final. The petitioner filed an objection in which he argued that an order to show cause was premature because he needed additional time to determine whether he met the requirements of § 52-470 (d) (3) or if good cause existed for the delay and that the court should wait until an amended petition is filed before deciding whether to issue an order. In addition, the petitioner's counsel represented that she needed additional time to fully investigate and to respond to the respondent's request. The respondent filed a reply arguing that the petitioner's counsel had eight months to determine the cause for the petitioner's delay in filing the petition and requesting that the court issue the order to show cause. Thereafter, the court held an evidentiary hearing during which the petitioner's counsel did not attempt to demonstrate that good cause for the delay in filing the petition existed or to argue that she needed additional time to inquire into the cause of the delay but, rather, argued that the court should deny the respondent's request because she needed additional time to inquire into a potential actual innocence claim and to file an amended petition on the petitioner's behalf. The court dismissed the petition, and the petitioner filed a motion for reconsideration in which he argued that the court's dismissal of the petition was in error because he intended to present evidence of a longtime medical condition as cause for his delay in filing the petition. The court, treating the motion as a motion to open the judgment, denied it, and, on the granting of certification, the petitioner appealed to this court. Prior to filing an appeal from the judgment on his second petition, the petitioner, as a self-represented party, filed a third habeas petition, which appeared to be a photocopy of the second petition, except for the addition of the statement "I am innocent" in the space on the form provided for reasons why his conviction was illegal and in the space provided for reasons why his incarceration/sentence was illegal. The habeas court, on the basis of its determination that the third petition was an exact copy of the second petition, rendered judgment dismissing the third petition pursuant to a rule of practice (§ 23-29) on the grounds that that the court lacked jurisdiction to consider the third petition, the third petition failed to state a claim on which relief could be granted and res judicata precluded the court from affording the petitioner relief. Thereafter, the habeas court denied the petition for certification to appeal, and the petitioner appealed to this court.

*With respect to the petitioner's appeal in Docket No. AC 42466, held:*

1. The petitioner could not prevail on his claim that the habeas court erred in failing to afford his counsel a reasonable opportunity to investigate the cause of the delay in filing the second habeas petition: there was no authority to support the petitioner's argument that the court was obligated to delay its consideration of the respondent's request for an order to show cause because the petitioner's counsel represented to the court that it was possible that, in the future, the petitioner could pursue an actual innocence claim in an amended petition, as the proper inquiry into the issue of good cause focuses only on the claims in the operative petition; moreover, the court did not abuse its discretion in

refusing to afford the petitioner any additional time prior to acting on the respondent's request, as the petitioner failed to demonstrate that his counsel lacked sufficient time in which to ascertain, investigate and present to the court a reason for the delay, and this court was not persuaded that the petitioner's counsel was not on notice of the purpose of the hearing on the respondent's request.

2. The habeas court did not abuse its discretion in treating the petitioner's motion for reconsideration as a motion to open or in denying that motion: a review of the motion revealed that it was an attempt by the petitioner to establish good cause for the delay in filing his second petition by means of facts related to his alleged medical condition that were not presented at the hearing on the respondent's request for an order to show cause, and the petitioner did not attempt to demonstrate that those facts were newly discovered or that, in the exercise of due diligence, they could not have been submitted at the hearing; moreover, the petitioner's contention that the habeas court was statutorily compelled by § 52-470 (e) to consider any information presented to it establishing good cause in ruling on an order to show cause was without merit, as the court afforded the petitioner an opportunity to present evidence of good cause at the hearing and thereafter properly applied the rules of practice to prevent him from waiting until after a judgment was rendered to establish good cause for the delay in filing the petition.

*With respect to the petitioner's appeal in Docket No. AC 42618, held*:

1. The habeas court abused its discretion in denying the petition for certification to appeal; the petitioner demonstrated that his claim of error relating to that court's dismissal of his third habeas petition pursuant to Practice Book § 23-29 on the ground that it failed to state a claim on which relief could be granted was debatable among jurists of reason and that the question raised was adequate to deserve encouragement to proceed further.

2. The appeal as to the petitioner's claim that the habeas court erred in denying his motion for permission to file a late amended petition for certification to appeal and for reconsideration of the denial of the petition for certification to appeal was dismissed; the petitioner failed to appeal from that court's ruling in accordance with § 52-470 (g) and our rules of practice by seeking certification to appeal from that ruling and then filing an appeal or amending his existing appeal, which deficiency was substantive in nature warranting dismissal of that portion of the appeal.

3. The habeas court's dismissal of the third habeas petition under Practice Book § 23-29 during its preliminary consideration of the petition and prior to issuing the writ of habeas corpus was procedurally improper: once that court concluded that any of the reasons set forth in the applicable rule of practice (§ 23-24) applied, it should have declined to issue the writ rather than dismissing the petition; moreover, this court was not persuaded that the proper remedy was to remand the case to the habeas court with direction to render judgment declining to issue the writ, as the habeas court's grounds for dismissing the third petition were based on its erroneous determination that the third petition was an exact copy of the second petition, and, because the allegations of innocence by the self-represented petitioner in the third petition were ambiguous and may constitute his attempt to set forth a claim of actual innocence, this court concluded, in accordance with *Gilchrist* v. *Commissioner of Correction* (334 Conn. 548), that the proper remedy was for the habeas court to issue the writ and, following the appointment of counsel, the petitioner be given the opportunity to rectify any pleading deficiencies.

Argued November 12, 2020—officially released June 1, 2021

*Procedural History*

Petition, in the first case, for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the court denied the petitioner's motion for reconsideration, and the petitioner, on the granting of certification, appealed to this court; and petition, in the second case, for a writ of habeas corpus, brought to the Superior Court in the

judicial district of Tolland, where the court, *Newson, J.*, rendered judgment dismissing the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court; subsequently, the court, *Newson, J.*, denied the petitioner's motion for permission to file a late amended petition for certification to appeal and for reconsideration of the denial of the petition for certification to appeal. *Affirmed in Docket No. AC 42466*; *appeal dismissed in part*; *reversed*; *judgment directed in Docket No. AC 42618*.

*Michael W. Brown*, for the appellant in both cases (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee in Docket No. AC 42466 (respondent).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, was *Gail P. Hardy*, former state's attorney, for the appellee in Docket No. AC 42618 (respondent).

*Opinion*

SUAREZ, J. In the present appeals, the petitioner, Antonio A., challenges the judgments rendered by the habeas court dismissing his second and third petitions for a writ of habeas corpus. In the judgment under review in Docket No. AC 42466, the habeas court dismissed the petitioner's second petition for a writ of habeas corpus pursuant to General Statutes § 52-470 on the ground that the petitioner had failed to show good cause for his delay in bringing the petition more than two years following a final judgment denying his first petition for a writ of habeas corpus. In AC 42466, the petitioner claims that the court erred in (1) failing to afford his counsel a reasonable opportunity to investigate the cause of the delay, and (2) denying his motion for reconsideration of its ruling. In AC 42466, we affirm the judgment of the habeas court. In the judgment under review in Docket No. AC 42618, the habeas court dismissed the petitioner's third petition for a writ of habeas corpus pursuant to Practice Book § 23-29 on multiple grounds. In AC 42618, the petitioner claims that the court erred in (1) denying his petition for certification to appeal, (2) denying his motion for permission to file a late amended petition for certification to appeal and for reconsideration of the denial of his petition for certification to appeal, and (3) dismissing the habeas petition. In AC 42618, we dismiss the portion of the appeal in which the petitioner claims that the court erred in denying the motion and reverse the judgment dismissing the habeas petition.

The following facts and procedural history are relevant to the present appeals. In 2003, following a jury trial, the petitioner was convicted of two counts of risk of injury to a child in violation of General Statutes (Rev. to 2001) § 53-21 (a) (2) and two counts of sexual assault in the first degree in violation of General Statutes (Rev. to 2001) § 53a-70 (a) (2).[1] In addition, the trial court found the petitioner to be in violation of his probation related to a prior narcotics conviction. As a result of this finding, the petitioner's probation was revoked, and he was resentenced to four years of incarceration. This sentence was consecutive to the sentence imposed for his conviction of sexual assault and risk of injury to a child. The petitioner was sentenced to a total effective term of incarceration of forty-four years, execution suspended after twenty-four years, followed by ten years of probation and lifetime registration as a sex offender. On direct appeal, this court affirmed the judgment of conviction, and both our Supreme Court and the Supreme Court of the United States denied subsequent petitions for certification to appeal from this court's judgment affirming his conviction. *State* v. *Antonio A.*, 90 Conn. App. 286, 878 A.2d 358, cert. denied, 275 Conn. 926, 833 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006).

In October, 2009, the petitioner filed an amended petition for a writ of habeas corpus (first petition) in which he claimed that his criminal trial attorney had rendered ineffective assistance in a variety of ways. Following a trial, the habeas court denied the petition. Following a grant of certification to appeal, on March 18, 2014, this court affirmed the judgment of the habeas court. *Antonio A*. v. *Commissioner of Correction*, 148 Conn. App. 825, 87 A.3d 600, cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). On May 21, 2014, our Supreme Court denied the petitioner's petition for certification to appeal from this court's judgment. *Antonio A*. v. *Commissioner of Correction*, 312 Conn. 901, 91 A.3d 907 (2014).

On October 6, 2017, the petitioner, in a self-represented capacity, filed a second petition for a writ of habeas corpus (second petition). The petitioner utilized a state supplied form. In responding to question five on the form, in which the petitioner was invited to specify why his "conviction is illegal," the petitioner wrote that his sentencing was illegal because the "court found [him] guilty on falsified information and improper/fictitious evidence" and that his criminal trial counsel did not render proper representation in that "prior counsel ignored mitigating evidence, did not investigate the state's case, did not protect [the petitioner] from the prejudice, malicious, intentional conduct." As additional grounds for challenging the conviction, the petitioner alleged: "[W]as not given appropriate interpreter (Spanish); jury was forced to find me guilty; there is no physical evidence supporting unstable statements; contradictory statements."

In response to question six on the form, in which the petitioner was permitted to specify why his "incarceration/sentence is illegal," the petitioner wrote: "Because of misconduct of all counsel involved in my case: Intentional, malicious, prejudicial, discriminatory (but is not limited to)." In box seven on the form, the petitioner alleged that the claims raised in the second petition had not been previously raised at trial, in a direct appeal, or in a previous habeas petition. He explained: "New evidence: Prior counsel did not present everything he was shown and or told or support [the petitioner] when the judge himself forced the jury to get a conviction; ineffective assistance of defense counsel; conflict of interest across the board (state attorney, defense attorney, judicial authority)."

The habeas court granted the petitioner's request for the appointment of counsel. On December 21, 2017, the Law Office of Christopher Duby, LLC, entered an appearance on the petitioner's behalf.

On August 9, 2018, the respondent, the Commissioner of Correction, pursuant to § 52-470 (d) and (e), filed a request for an order to show cause why the petitioner

should be permitted to proceed with the second petition after having filed it more than two years after the judgment denying the first petition became final on May 21, 2014, when our Supreme Court denied the petitioner's petition for certification to appeal.[2] According to the respondent, the petitioner brought the second petition three years, four months, and fifteen days after the judgment denying the first petition became final and he did not rely on "the retroactive application of a new constitutional right . . . ." Thus, the respondent argued, the rebuttable presumption in § 52-470 (d), that the petition had been delayed without good cause, was implicated in the present case.

On August 13, 2018, the petitioner, through his counsel, filed an objection to the respondent's request. The petitioner acknowledged that he filed the second petition "more than three years after [the] prior petition became final" but argued that an order to show cause under § 52-470 would be "premature." The petitioner stated that he needed additional time to determine whether he met the requirements of § 52-470 (d) (3) or if good cause existed. In this regard, the petitioner argued that his counsel was not "tied" to the claims set forth in his second petition and that the court "should wait until [an] amended petition is filed to determine whether there is such a violation requiring an order to show cause." In the petitioner's objection, his counsel represented that, because she had not yet received case files from *all* of the petitioner's prior attorneys, she was "not able to properly investigate the petitioner's claims to determine whether a constitutional claim under § 52-470 (d) (3) or good cause exists. Therefore, the court should grant [counsel] additional time to fully investigate and respond to the respondent's request to show cause."

The respondent filed a reply in which he argued that, although § 52-470 (e) affords a petitioner "a meaningful opportunity to investigate the basis for the delay" in bringing a subsequent petition, that provision was "not a license to spend years exploring the merits of untimely claims." The respondent argued that the petitioner's counsel had eight months to determine why the petitioner waited so long to bring the second petition and requested that "the court issue the order to show cause and grant the petitioner no more than three months to respond to that order. At that time, if the court finds that the petitioner is likely to establish good cause for his delay, it can order that he be given additional time."

On the basis of the respondent's request and the petitioner's objection thereto, the court, *Newson, J.*, scheduled an evidentiary hearing on the request for September 12, 2018. At the hearing, the petitioner's counsel altered the focus of the objection to the respondent's request. At that time, she did not attempt to demonstrate that good cause for the delay in filing the

second petition existed or to argue that she needed additional time to inquire into the cause of the delay. Instead, she argued that the court should deny the respondent's request because, under the existing circumstances, it would be appropriate for the respondent to assert the issue of impermissible delay under § 52-470 as a basis for dismissal, if at all, in its return as a special defense to the petition, and only after she had an opportunity to file an amended petition on the petitioner's behalf. The petitioner's counsel agreed with the court that, like other motions to dismiss, the respondent's request was supposed to be evaluated on the basis of the operative petition before the court at the time the motion to dismiss is filed. Nonetheless, the petitioner's counsel argued that, because the petitioner had not admitted his guilt in prior proceedings, a claim of actual innocence, which could be raised *at any time*,[3] was "a potential claim" that counsel could raise on his behalf in a future amended petition, despite the fact that the petitioner, while a self-represented litigant, failed to include such a claim in his petition. The petitioner's counsel argued: "This is a circumstance where . . . I just received the files from some of his original counsel, and I still do not know if an actual innocence claim is actually available. However, from talking to [the petitioner], it appears that actual innocence is on the table as a potential claim, but, as of right now, I do not have the information and the evidence to indicate that it's true." The petitioner's counsel stated that it was important for her to have all of trial counsel's files "to determine whether there is new evidence" on which she could rely in advancing an actual innocence claim.

At the hearing, the respondent disagreed that the request for an order to show cause should be denied because an amended petition had not yet been filed on the petitioner's behalf by his assigned counsel. The respondent's counsel, focusing on the fact that the petitioner's counsel had merely viewed a claim of actual innocence as a *potential* claim, argued: "If counsel is able to represent as an officer of the court that she has a good faith basis to pursue an actual innocence claim, the court may exercise its discretion and give her time to investigate that. But just to say, well, he said he's not guilty, and, therefore, [the court] can't dismiss [the petition under § 52-470] because we may in the future raise an actual innocence claim is vastly different from making a good faith representation. So we will ask the court to proceed."

In its memorandum of decision of November 7, 2018, the court rejected the petitioner's argument that the respondent's request was premature. The court relied on *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 721, 189 A.3d 578 (2018), for the proposition that "a hearing under § 52-470 [e] may be held at any time, at the discretion of the court, and that there is no requirement that pleadings be closed before a hearing

is held." The court observed that a request brought under § 52-470 (e) did not require the court to assess "the substance or legal viability of the claims in the petition, but only whether there was good cause for commencing the habeas action beyond the statutory deadline." (Internal quotation marks omitted.) Thus, the court reasoned, the petitioner's arguments concerning a potential actual innocence claim or the fact that counsel had not yet amended his self-represented petition were immaterial to the court's analysis.

The court also rejected the petitioner's argument that his counsel did not have a meaningful opportunity to respond to the respondent's request. The court, relying on relevant case law, stated that it had to "determine whether the petitioner has had an opportunity that would comport with due process to investigate whether there was a substantial reason for [the petitioner's] having failed to file this petition within two years from May 21, 2014." The court carefully considered the length of time that the petitioner's counsel had been involved in the case. Particularly, the court observed that the petitioner's counsel had filed an appearance on December 21, 2017, nine months prior to the hearing on the respondent's request and that the court held a hearing on the respondent's request five weeks after it was filed. The court stated that, in light of the narrow issue to be addressed at the hearing, the petitioner's counsel "was unable to offer a single reason for the delay in filing the present habeas petition." The court relied on the representations of the petitioner's counsel that she had received case files from only some of the petitioner's prior counsel. In particular, the court deemed it significant that, in February, 2018, the petitioner's counsel had received the case file related to the first petition. As the court stated, "[s]urely, having received cooperation from the lawyer who immediately preceded her in representing the petitioner some seven months prior to the request to show cause hearing provided [the] petitioner's counsel with a fair opportunity to complete, or at least an obvious location to start, an investigation into the reasons for the delay of more than two years in filing the present petition."

The court concluded its analysis: "In summary, the court finds that the petitioner had a 'meaningful opportunity' to investigate whether any 'good cause' for filing the present petition more than two years after the judgment in his prior habeas case became final. . . . Despite that, the petitioner has offered no 'good cause,' no 'substantial reason,' in fact, no reason at all, for filing the present petition more than three years after the decision in his prior habeas [case] became final on May 21, 2014. . . . As such, the petitioner has failed to rebut the presumption that the delay of more than two years was without good cause." (Citations omitted.) The court dismissed the second petition.

On November 14, 2018, the petitioner, through counsel, filed a motion, titled "motion for reconsideration," in which he argued that the court's dismissal of his second petition was in error because he intended to present evidence of a longtime medical condition as cause for his delayed petition. In an order dated November 20, 2018, the court treated the motion for reconsideration as a motion to open the judgment and denied it on the ground that the petitioner had been afforded an opportunity to advance reasons in support of his objection to the request for an order to show cause, and, in the present motion to open, he was relying on reasons that were within his personal knowledge but were not disclosed by him at the September 12, 2018 hearing related to the respondent's request and his objection thereto.

Thereafter, on December 4, 2018, the court granted the petitioner's petition for certification to appeal. See General Statutes § 52-470 (g). On January 9, 2019, the petitioner, through counsel, filed the appeal in AC 42466.

Meanwhile, on December 18, 2018, the petitioner, in a self-represented capacity, filed a third petition for a writ of habeas corpus (third petition), the dismissal of which is the subject of AC 42618. With two exceptions, the third petition appears to be a photocopy of the second petition.[4] In the space provided for question five on the state supplied form, in which the petitioner was invited to specify reasons why his "conviction is illegal," the petitioner added "I am innocent" to the information previously set forth therein. In the space provided for question six on the form, in which the petitioner was asked to set forth reasons that his "incarceration/sentence is illegal," the petitioner added "I am innocent" to the information previously set forth therein.

On December 24, 2018, the court, *Newson, J.*, dismissed the third petition pursuant to Practice Book § 23-29.[5] The court's notice of dismissal stated in relevant part: "The petition for a writ of habeas corpus is dismissed pursuant to Practice Book § 23-29 (a) (1) in that this court lacks jurisdiction to consider this petition and the allegations therein on the grounds that this court's November 7, 2018 decision dismissing an exact copy (literally) of the present petition . . . is currently being appealed (see Practice Book § 61-11 (a) (rules on automatic stay)), and (2) the petition fails to state a claim upon which this court could grant relief, given [the] pendency of an appeal from the prior identical petition and automatic stay required while the appeal is pending (Practice Book § 61-11 (a)), and (3) res judicata, in that the present petition presents the identical grounds as a prior petition and fails to state new facts or offer new information not reasonably available at the time of the prior petition."

On January 11, 2019, the petitioner, as a self-represented litigant, filed a petition for certification to appeal from the court's judgment dismissing the third petition. The petitioner set forth the grounds for the appeal on his "application for waiver of fees, costs, and expenses and appointment of counsel on appeal" form: "Whether the court abused its discretion when it states [that] the petition fails to state a claim upon which this court could grant relief; such other errors as are revealed upon review of the transcript." The court denied the petition on that same day.[6] The petitioner, through counsel, thereafter filed an appeal, AC 42618, from the court's denial of his petition for certification to appeal and the judgment dismissing the third petition.

On July 11, 2019, the petitioner, through counsel, filed a motion for permission to file a late amended petition for certification to appeal and for reconsideration of the denial of his petition for certification to appeal, in which he argued that the court should grant the amended petition in the interest of justice. The amended petition, which was attached to the motion, set forth five grounds.[7] The motion also stated: "The claims that undersigned counsel has identified appear to be implicit in the petition for certification to appeal that was filed by the petitioner in his initial petition for certification to appeal, but the petitioner, acting as a [self-represented] litigant without the assistance of counsel, may have under articulated the nature of the claims to be raised on appeal." On July 15, 2019, the court, *Newson*, *J.*, denied the petitioner's motion. Thereafter, the petitioner did not attempt to appeal from the ruling. Additional facts will be set forth as necessary in the context of the claims raised on appeal.

I

AC 42466

A

The first claim raised by the petitioner in AC 42466 is that the court erred in failing to afford his counsel a reasonable opportunity to investigate the cause of the delay in filing the second petition.[8] We disagree.

As we will explain in greater detail in this part of the opinion, the court's determination of when it should act on a request brought by the respondent for an order to show cause why an untimely petition should be permitted to proceed is reviewed under the abuse of discretion standard of review. See *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 724. "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that

the ruling appears to have been made on untenable grounds. . . . In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case." (Citations omitted; internal quotation marks omitted.) *State* v. *Arbour*, 29 Conn. App. 744, 748, 618 A.2d 60 (1992).

First, the petitioner argues that the court's ruling reflected an abuse of its discretion because the respondent, in his reply to the petitioner's objection to the request for an order to show cause, urged the court to "issue the order to show cause and grant the petitioner no more than three months to respond to that order." As stated previously, the petitioner, in his objection to the respondent's request for an order to show cause, stated that he needed "additional time" to determine if he satisfied § 52-470 (d) (3) or if good cause existed. Our review of the respondent's reply indicates that the respondent's suggestion was an attempt to balance between the petitioner's right to have an opportunity to investigate the basis of the delay and the fact that the petitioner seemingly sought an open-ended period of time in which to determine the answer to a discrete issue, namely, why there was a delay. The respondent, noting the length of time that had already passed, did not concede that an order to show cause was premature. Even assuming that the respondent made such a concession at trial, however, the petitioner has not presented this court with any authority to support his argument that it would have been binding on the habeas court. As we will discuss in greater detail, the petitioner's principal objection to the timing of the hearing was his flawed belief that the habeas court was obligated to wait for the petitioner's counsel to file an amended petition. Moreover, the petitioner failed to demonstrate that his counsel lacked sufficient time in which to ascertain, investigate and present a reason for his delay in filing the second petition. For these reasons, we are not persuaded that the court's failure to agree with the respondent's proposal reflected an abuse of discretion.

Second, the petitioner argues that any potential claim of actual innocence "should have been sufficient to delay or overcome the good cause stage." According to the petitioner, because of the representation of his counsel that it was possible that she would pursue an actual innocence claim in an amended petition in the future, the court was obligated to delay the timing of the hearing and to afford counsel "sufficient time to determine whether they have a good faith basis to present such a weapon to survive possible dismissal."[9]

This argument presents an issue of statutory interpretation over which we exercise plenary review in accordance with the plain meaning rule codified in General Statutes § 1-2z.[10] See, e.g., *State* v. *Peters*, 287 Conn. 82, 87–88, 946 A.2d 1231 (2008). By its terms, § 52-470 (d) applies "[i]n the case of *a petition filed* subsequent to

a judgment on a prior petition challenging the same conviction," and it gives rise to "a rebuttable presumption that the filing of *the subsequent petition* has been delayed without good cause if *such petition* is filed" after the occurrences specified therein. (Emphasis added.) Pursuant to § 52-470 (e), "[i]n a case in which the rebuttable presumption of delay under subsection . . . (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why *the petition* should be permitted to proceed." (Emphasis added.) Moreover, the statute provides that, "[i]f . . . the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss *the petition*." (Emphasis added.) General Statutes § 52-470 (e).

As the emphasized language reflects, once the respondent relies on the rebuttable presumption in § 52-470, the court's good cause inquiry is properly focused not on a hypothetical petition that the petitioner may file in the future but on the petition that has been filed by the petitioner. In the present case, it is not in dispute that the second petition neither invoked a retroactive constitutional or statutory right under § 52-470 (d) (3) nor asserted a claim of actual innocence.

Our Supreme Court's interpretation of the relevant statutory provisions provides additional guidance. In *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 712, our Supreme Court considered whether "§ 52-470 divests the habeas court of discretion to determine when it should act on a motion by the respondent . . . for an order to show cause why an untimely petition should be permitted to proceed." The court, rejecting the habeas court's determination that the statute deprived it of discretion to act on the respondent's motion until the close of all pleadings, explained: "In § 52-470 (e), the legislature outlined the procedure by which the respondent may rely on the rebuttable presumption established by § 52-470 (c) and (d) that no good cause exists for a delay in filing the petition. . . . We begin with two observations about § 52-470 (e). First, in contrast to the court's inquiry as to whether good cause exists for trial, which the court may undertake either on its own motion or by the motion of any party; General Statutes § 52-470 (b) (1); the court's duty to inquire whether there is good cause for a delay is triggered only upon the request of the respondent. If the respondent makes such a request, the court shall issue an order to show cause. Second, and more important, nothing in the language of § 52-470 (e) expressly clarifies or limits the *timing* of that order. As opposed to the language of § 52-470 (b), which specifically and expressly requires that the court wait until after the close of all pleadings to address whether there is good cause for trial, § 52-470 (e) contains no such time limit. If the legislature had intended to incorporate a time constraint into § 52-470 (e), it could have done

so. . . .

"Notably, as compared to the procedures available under § 52-470 (b) to demonstrate that good cause exists for trial, § 52-470 (e) provides significantly less detail regarding the procedures by which a petitioner may rebut the presumption that there was no good cause for a delay in filing the petition. Specifically, § 52-470 (e) merely provides in relevant part that [t]he petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section.

"Nothing in subsection (e) expressly addresses whether the petitioner may present argument or evidence, or file exhibits, or whether and under what circumstances the court is required to hold a hearing, if the court should determine that doing so would assist it in making its determination. The only express procedural requirement is stated broadly. The court must provide the petitioner with a meaningful opportunity both to investigate the basis for the delay and to respond to the order to show cause. General Statutes § 52-470 (e). The phrase meaningful opportunity is not defined in the statute. That phrase typically refers, however, to the provision of an opportunity that comports with the requirements of due process. . . . The lack of specific statutory contours as to the required meaningful opportunity suggests that the legislature intended for the court to exercise its discretion in determining, considering the particular circumstances of the case, what procedures should be provided to the petitioner in order to provide him with a meaningful opportunity, consistent with the requirements of due process, to rebut the statutory presumption.

"We envision that, in the majority of cases, the question of whether a petitioner has demonstrated good cause for delay will not require that the habeas court engage in an inquiry that is similar in scope to the one required for the screening of meritless petitions pursuant to § 52-470 (b). The absence of detailed procedural requirements in § 52-470 (e), as compared with those identified in § 52-470 (b), is consistent with that general expectation. In many cases, the habeas court will likely be able to resolve the question of whether there was good cause for delay soon after the respondent files a motion requesting an order to show cause. In some instances, however, the basis for a delay may be inextricably intertwined with the merits of the petition.

Under such circumstances, the court will be required to engage in a more substantive inquiry, which will more closely resemble the type of inquiry contemplated under § 52-470 (b). Section 52-470 (e) expressly recognizes that possibility by stating good cause for delay may include the discovery of new evidence *which materially affects the merits of the case* and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection (c) or (d) of this section. . . .

"In the absence of any language in [§ 52-470 (e)] cabining the discretion of the habeas court with respect to the timing of the issuance of an order to show cause for delay, we conclude that the legislature intended that the court exercise its discretion to do so when the court deems it appropriate given the circumstances of the case. This conclusion strikes the appropriate balance between the principles of expediency and due process. . . . Our conclusion that the habeas court is not required to wait until the close of all pleadings to issue an order to show cause why the petition should be permitted to proceed when there is a rebuttable presumption of delay is consistent with the purpose underlying [Public Acts 2012, No. 12-115, § 1]—to screen out meritless and untimely petitions in an expeditious manner. . . . Our conclusion also protects the petitioner's right to due process by giving proper effect to the requirement in § 52-470 (e) that the habeas court provide the petitioner with a meaningful opportunity to rebut the presumption that he lacked good cause for the delay. As we have explained, in some instances, the provision of such meaningful opportunity will require the habeas court to determine whether, under the particular circumstances of the case, the basis for delay is intertwined with the merits of the petition.

"Our statutory construction is also consistent with the bedrock principle that [t]he trial court possesses inherent discretionary powers to control pleadings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. . . . Finally, we observe that the rules of practice expressly recognize the habeas court's discretion over scheduling. . . .

"The habeas court's exercise of its discretion to manage the case remains the best tool to guarantee that the case is disposed of as law and justice require; General Statutes § 52-470 (a); as the habeas judge is in the best position to balance the principles of judicial economy and due process." (Citations omitted; emphasis in original; footnotes omitted; internal quotation marks omitted.) *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 720–26.

Thus, as we observed previously, in *Kelsey*, our Supreme Court concluded that the habeas court had discretion to determine when it should act on a request

brought by the respondent for an order to show cause why an untimely petition should be permitted to proceed. Id, 724. It rejected the view that, under § 52-470, the court lacked the discretion to act on the request until the pleadings in the case were closed. Id. In light of the interpretation of the statute set forth previously, informed by *Kelsey*, we reject the petitioner's argument that the habeas court in the present case lacked the discretion to act on the respondent's request because the petitioner's counsel stated that it was possible that the petitioner could bring an amended petition, including a claim of actual innocence, in the future. There is no authority in support of the petitioner's view that the court was obligated to delay its consideration of the respondent's request.[11]

Third, the petitioner argues that the court's determination, that his counsel had sufficient time in which to respond to the state's request, was flawed and that the court acted arbitrarily in denying his counsel's request for "a continuance" in this matter. The petitioner argues that it was overly simplistic for the court to suggest that counsel needed to determine only whether the second petition was untimely but that counsel also needed to determine whether there was good cause for the delay and whether "the petitioner was pursuing a claim that was exempt from the timeliness questions." The petitioner also argues that the court failed to give proper weight to the fact that the files of previous counsel that had not yet been made available to the petitioner could have contained evidence to support a claim of actual innocence.

In the petitioner's objection to the respondent's request for an order to show cause, he primarily argued that the request was premature because the issue could not be resolved until an amended petition was filed. The petitioner thereby linked the inquiry into good cause for the delay with the filing of an amended petition. In addition, the petitioner's counsel argued that additional time was needed to investigate the issue of whether the petitioner, in bringing the second petition, had acted with good cause. Our careful review of the arguments advanced by the petitioner's counsel at the September 12, 2018 hearing reveals that counsel did not argue that a continuance was necessary to investigate whether good cause existed for the delay in bringing the second petition. Rather, counsel argued that additional time was needed in which to investigate whether a claim could be brought that fell outside of the two year time limit in § 52-470. Presently, the petitioner's argument is not that the court failed to afford counsel sufficient time to investigate the basis for the delay in bringing the petition that was before the court but that the court failed to afford counsel additional time in which to investigate claims that were not part of the operative petition before the court.

For the reasons discussed previously in this opinion, the petitioner's argument is legally flawed because the proper good cause inquiry focuses on the operative petition before the court, not on claims that are not part of the operative petition. Here, as we have observed, the operative petition did not set forth a claim of actual innocence. Moreover, as our previous discussion of *Kelsey* reflects, in most cases, an inquiry into good cause will not require an evaluation of the merits of a petition, but "the habeas court will likely be able to resolve the question of whether there was good cause for the delay soon after the respondent files a motion requesting an order to show good cause." *Kelsey* v. *Commissioner of Correction*, supra, 329 Conn. 723.

The operative second petition was untimely, and, therefore, the proper inquiry into the issue of good cause is based only on the reasons for the petitioner's delay in bringing the second petition. The court properly focused on the time that had passed between the time at which counsel was appointed to represent the petitioner and the hearing on the respondent's request. The court also focused on the time that had passed between the date the respondent had filed his request for an order to show cause and the date of the hearing on the request. At no time has the petitioner demonstrated that his counsel lacked sufficient time in which to ascertain, investigate, and present a reason for the delay to the court. Accordingly, we are not persuaded that the court abused its discretion in refusing to afford any additional time to the petitioner prior to acting on the respondent's request.

Fourth, the petitioner argues that the court erred by issuing a ruling on the substantive issue raised by the respondent, namely, whether good cause existed. The petitioner argues that his counsel objected to the timing of the hearing but that she did not present "a substantive response to the order to show cause before the habeas court issued its memorandum of decision because [his counsel] had not had a meaningful opportunity to complete [an] investigation into whether there was good cause for the petitioner's apparent delay in filing the [second] petition." The petitioner argues that, at the hearing, the court did not indicate that it was affording the petitioner his "only opportunity to offer substantive evidence or information in support of an attempt to overcome the presumption of delay."

This argument is belied by the notice of the hearing that was sent to the parties in response to the respondent's request for an order to show cause. In its order, the court stated that it was scheduling an "evidentiary hearing" on the respondent's request. Moreover, as we have stated previously, at the hearing, the petitioner's counsel did not argue that she needed additional time in which to investigate the reasons for the delay in bringing the second petition but argued that the court

was precluded from acting on the respondent's request for an order to show cause unless and until an amended petition was filed on the petitioner's behalf. The court neither suggested that counsel should limit her presentation to the reasons why the court should not act on the request nor precluded counsel from presenting any argument or evidence with respect to the issue of good cause for the delay. Accordingly, we are not persuaded that counsel was not on notice of the purpose of the hearing.

B

Next, the petitioner claims that the court erred in denying his motion for reconsideration of its ruling. We disagree.

As we stated in our discussion of the procedural history, the court dismissed the second petition on November 7, 2018. On November 14, 2018, the petitioner, through counsel, filed a motion for reconsideration in which he stated that "[the] dismissal was in error, as the petitioner's counsel intended to, in the absence of the court's decision regarding the petitioner's objection to [the] respondent's motion for cause and request for additional time, present evidence of the petitioner's longtime medical condition as cause for his delayed petition." The motion stated in relevant part that, "during the approximately three years between his prior habeas [action] and filing [the second] petition, [the] petitioner was focused solely on his survival. Once he became healthy enough to file his petition, he did so in October, 2017." Attached as exhibits to the motion were a document titled "Petitioner's Offer of Proof"[12] and a signed affidavit of the petitioner, submitted "as evidence that his delayed petition was as a result of his ongoing medical conditions and their related treatments."

As we have explained, the court treated the motion for reconsideration as a motion to open brought under General Statutes § 52-212a[13] and Practice Book § 17-4.[14] In denying the motion, the court stated: "Counsel for the petitioner first filed an appearance in the file on December 21, 2017. The petitioner was provided with advance notice by way of the request for an order to show cause filed by the respondent on August 7, 2018, as well as the order and notice of hearing provided by the court. A hearing was held before the court on September 12, 2018, where the petitioner was provided with an opportunity to advance reasons in support of [his] objection to the respondent's motion. The court did not issue a written decision on the matter until November 7, 2018. The petitioner now offers reasons that were wholly within the petitioner's personal knowledge as a basis to [open] the judgment. Under these facts, the court finds no good and compelling reason to modify or vacate the judgment." (Internal quotation marks omitted.)

According to the petitioner, "[t]he habeas court made a legal error when it interpreted the petitioner's motion for reconsideration as a motion to [open]. Because the petitioner filed the motion for reconsideration within the [twenty] day period for reargument provided by Practice Book § 11-12, the habeas court was compelled to treat it as a motion to reargue, and was without basis to consider the motion as a motion to [open] the judgment." The petitioner also argues that the court improperly penalized him for his counsel's failure to present the reasons set forth in the motion at the hearing on the respondent's request for an order to show good cause. The petitioner argues: "Seemingly, the habeas court's analysis that it was not compelled by the petitioner's medical issues sufficiently to find them to be a good and compelling reason to modify or vacate the judgment was based entirely on a critique of counsel's handling of the petitioner's matter, and not on a substantive review of the information and materials presented." (Internal quotation marks omitted.) The petitioner asserts that "[t]he language of § 52-470 (e) makes clear that, if the habeas court is presented with information establishing good cause for delay, it must consider it in ruling on an order to show cause."

The petitioner's claim rests on the legally unfounded assertion that, because he could have timely filed a motion for reconsideration at the time at which he filed the motion at issue and he titled the motion a "motion for reconsideration," the court was obligated as a matter of law to treat the motion as a motion for reconsideration. Our decisional law provides that "[t]he nature of a motion, however, is not determined by its title alone. A court has broad discretion to treat a motion for clarification of a judgment or a motion to reargue a judgment as a motion to open and modify the judgment . . . ." (Internal quotation marks omitted.) *Silver* v. *Silver*, 200 Conn. App. 505, 520, 238 A.3d 823, cert. denied, 335 Conn. 973, 240 A.3d 1055 (2020); see also *Drahan* v. *Board of Education*, 42 Conn. App. 480, 489, 680 A.2d 316 ("[w]hen a case requires this court to determine the nature of a pleading filed by a party, we are not required to accept the label affixed to that pleading by the party"), cert. denied, 239 Conn. 921, 682 A.2d 1000 (1996).

Motions for reargument and motions for reconsideration are nearly identical in purpose.[15] "[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . A reconsideration implies reexamination and possibly a different decision by the [court] which initially decided it. . . . While a modification hearing entails the presentation of evidence of a substantial change in circumstances, a reconsideration

hearing involves consideration of the trial evidence in light of outside factors such as new law, a miscalculation or a misapplication of the law." (Citations omitted; internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202–203, 655 A.2d 790 (1995). "[T]he purpose of reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Mamudi*, 197 Conn. App. 31, 47 n.13, 231 A.3d 297, cert. denied, 335 Conn. 921, 231 A.3d 1169 (2020); see also *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001).

In contrast, a motion to open affords a litigant a narrow window through which to present evidence that could not have been known and with reasonable diligence offered at the time of trial. Practice Book § 17-4 (a) provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ." "The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 94, 952 A.2d 1 (2008). "One of the essential requirements for the granting of [a motion to open] is that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at trial." *Corbin* v. *Corbin*, 179 Conn. 622, 626, 427 A.2d 432 (1980), citing *Stocking* v. *Ives*, 156 Conn. 70, 72, 238 A.2d 421 (1968); see also *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 843–44, 59 A.3d 247 (materials submitted to court in connection with motion to reargue must be shown to be "newly discovered or that, in the exercise of due diligence, they could not have been submitted earlier"), cert. granted, 308 Conn. 905, 61 A.3d 1098 (2013) (appeal withdrawn November 26, 2014).

We conclude that the court did not abuse its broad discretion in treating the petitioner's motion for reconsideration as a motion to open.[16] A review of the motion

reveals that it was an attempt by the petitioner to supplement the record of what was presented at the September 12, 2018 hearing on the respondent's request for an order to show cause. In other words, the petitioner's motion was an attempt to establish good cause by means of facts that were not presented to the court at the hearing. In the motion, the petitioner did not attempt to demonstrate that the facts on which the motion was based were newly discovered or that, in the exercise of due diligence, they could not have been submitted at the hearing. To the contrary, the facts on which the motion was based, relating to alleged ailments of the petitioner, certainly were known to the petitioner prior to the hearing.

"Habeas corpus is a civil proceeding. . . . The principles that govern motions to open or set aside a civil judgment are well established. A motion to open and vacate a judgment . . . is addressed to the [habeas] court's discretion, and the action of the [habeas] court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 563, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 980 (2016); see also *Gillis* v. *Gillis*, 214 Conn. 336, 340, 572 A.2d 323 (1990) (abuse of discretion standard of review applies to rulings on motions to open). For the reasons previously discussed, we readily conclude that the petitioner is unable to demonstrate that the court's ruling on the motion to open reflects an abuse of discretion.

The petitioner argues that the court was "statutorily compelled" by § 52-470 (e) to consider any information presented to it establishing good cause. He argues that the court "must consider it *in ruling on an order to show cause*." (Emphasis added.) The problem with the petitioner's argument is that the ruling at issue is not a ruling following an order to show cause but, rather, a motion for reconsideration that we have concluded was properly viewed by the court as a motion to open the judgment dismissing the second petition. Neither § 52-470 (e) nor our case law interpreting the statute permits a petitioner to circumvent the rules of practice. The court afforded the petitioner an opportunity to present evidence of good cause at the hearing that took place on September 12, 2018, and the court thereafter properly applied the rules of practice to prevent the petitioner from waiting until after a judgment was rendered to prove the reasons for his delay in bringing his untimely second petition.

Accordingly, in AC 42466, we affirm the judgment of the court.

II

AC 42618

A

The first claim raised by the petitioner in AC 42618 is that the court erred in denying his petition for certification to appeal. We agree with this claim.

Section 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

"Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . . If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Crespo* v. *Commissioner of Correction*, 292 Conn. 804, 811, 975 A.2d 42 (2009); see also *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994) (adopting factors identified by United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as appropriate standard for determining whether habeas court abused its discretion in denying certification to appeal).

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Villafane* v. *Commissioner of Correction*, 190 Conn. App. 566, 573, 211 A.3d 72, cert. denied, 333 Conn. 902, 215 A.3d 160 (2019).

For the reasons set forth in part II C of this opinion, we conclude that the petitioner has demonstrated that the claim of error relating to the court's dismissal of

his third petition pursuant to Practice Book § 23-29 on the ground that it fails to state a claim on which relief could be granted is debatable among jurists of reason and that the question raised is adequate to deserve encouragement to proceed further. Accordingly, we conclude that the court abused its discretion in denying the petition for certification to appeal.

B

We next address the petitioner's claim that the court erred in denying his motion for permission to file a late amended petition for certification to appeal and for reconsideration of the court's denial of his petition for certification to appeal. We dismiss this portion of the appeal.

As we stated in our discussion of the procedural history, six months after the court denied the petition for certification to appeal from the dismissal of the third petition, the petitioner filed a motion for permission to file a late amended petition for certification to appeal and for reconsideration of the denial of his petition for certification to appeal.[17] Therein, he raised five grounds on which he sought to appeal. On July 15, 2019, the court denied the motion. The petitioner did not, however, file a petition for certification to appeal from the court's July 15, 2019 denial of his motion or attempt to appeal from that ruling in accordance with § 52-470 (g).

The petitioner set forth the present claim in the portion of his brief in which he analyzed the claim that we addressed in part II A of this opinion. As a preliminary matter, we observe that the petitioner has merely claimed error with respect to the court's denial of his motion. He has analyzed the propriety of the court's denial of his petition for certification to appeal but has not provided this court with a distinct analysis of the separate and distinct ruling at issue. Our Supreme Court repeatedly has stated that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003).

More importantly, we recognize that the claim is not properly before this court as it is not part of the appeal taken from the denial of the petition for certification to appeal and the judgment dismissing the third petition. It is well settled that "an appeal following the denial of a petition for certification to appeal from the judgment denying a petition for a writ of habeas corpus is not the

appellate equivalent of a direct appeal from a criminal conviction. Our limited task as a reviewing court is to determine whether the habeas court abused its discretion in concluding that the petitioner's appeal is frivolous." *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 216, 72 A.3d 1162, cert. denied, 301 Conn. 928, 78 A.3d 145 (2013). The ruling that is the subject of the appeal was framed by the court's denial of the petition for certification to appeal, and, in light of the *denial* of such petition, the petitioner may not enlarge the scope of the appeal to encompass new issues that arose at a later date. "The right to an appeal is not a constitutional one. It is but a statutory privilege available to one who strictly complies with the statutes and rules on which the privilege is granted." (Internal quotation marks omitted.) *Brown* v. *Brown*, 190 Conn. 345, 350, 460 A.2d 1287 (1983).

Setting aside the issue of whether the habeas court had jurisdiction to grant the petitioner the relief that he sought in his motion in light of the fact that the present appeal was pending at the time that he filed the motion, we observe that the petitioner failed to appeal from the ruling at issue in accordance with § 52-470 (g) and our rules of practice by taking appropriate steps to seek certification to appeal from that ruling and then bringing an appeal or amending his existing appeal. "In accordance with our policy not to exalt form over substance, we have been reluctant to dismiss appeals for technical deficiencies in an appellant's appeal form." *Rocque* v. *DeMilo & Co.*, 85 Conn. App. 512, 527, 857 A.2d 976 (2004). The deficiency at issue in the present case involves a failure to appeal from the ruling sought to be appealed; it can hardly be said that the petitioner's existing appeal of February 20, 2019, apprised this court or the respondent that the petitioner intended to appeal from the court's subsequent July 15, 2019 ruling. Thus, the deficiency at issue is of a substantive nature warranting dismissal of this portion of the appeal.

### C

Finally, the petitioner claims that the court erred in dismissing his third petition. We agree.

As we stated previously in this opinion, the court dismissed the third petition on three grounds. The court stated: "The petition . . . is dismissed pursuant to Practice Book § 23-29[18] (1) in that this court lacks jurisdiction to consider this petition and the allegations therein on the grounds that this court's November 7, 2018 decision dismissing an exact copy (literally) of the present petition . . . is currently being appealed (see Practice Book § 61-11 (a) (rules on automatic stay)), and (2) the petition fails to state a claim upon which this court could grant relief, given [the] pendency of an appeal from the prior identical petition and automatic stay required while the appeal is pending (Prac-

tice Book § 61-11 (a)), and (3) res judicata, in that the present petition presents the identical grounds as a prior petition and fails to state new facts or offer new information not reasonably available at the time of the prior petition." (Footnote added.)

The petitioner argues that "[e]ach of the habeas court's reasons for dismissing [his self-represented third] petition was in error. The habeas court erred by concluding [that] the [third] petition was identical to a prior [self-represented] petition, and the habeas court erred in concluding that the [self-represented third] petition failed to state a claim upon which relief could be granted. The habeas court wrongly concluded that the dismissal of the prior [self-represented] petition, and the pending appeal challenging that dismissal, barred the filing of a new, modified [self-represented third] petition . . . . The habeas court incorrectly applied the doctrine of res judicata to the new, materially different, [self-represented third] petition. Finally, the automatic stay provisions of Practice Book § 61-11 are irrelevant to the petitioner's ability to proceed on a new [self-represented third] petition . . . and the habeas court erred by relying on those provisions as a basis for dismissal. This matter should be returned to the habeas docket where the petitioner can be appointed counsel and present evidence in support of his claim of innocence."

Most of the petitioner's arguments rest on the proposition that, unlike the second petition, which had been dismissed and was the subject of a pending appeal, the third petition twice set forth a claim of actual innocence because the petitioner twice added the statement "I am innocent" to the allegations of the second petition. The petitioner states that the second and third petitions "are mostly the same, except that the [third] petition . . . includes two statements of innocence." Although the petitioner acknowledges that this additional language in the third petition was "not a model of clarity," he urges us to conclude that "it sufficiently states a claim of innocence."

The petitioner does not appear to claim that, in dismissing the third petition, the court erroneously dismissed the identical claims raised in the second petition. Indeed, the petitioner states that "[t]he main error that [he] complains of is that the habeas court sua sponte dismissed his newly raised claim of innocence." We therefore must first resolve the issue of whether an actual innocence claim was raised in the third petition.

Basing his appellate arguments on the existence of a claim of actual innocence, the petitioner argues that the court erred in its determination that the third petition was identical to the second petition. The petitioner argues that the claim of actual innocence shielded the third petition from dismissal under § 52-470 (d), even if it was filed more than two years after a final decision

was rendered with respect to his first petition. He also argues that, as a matter of law, a claim of actual innocence is a claim on which relief may be granted and argues that the court was "compelled to accept that representation [of actual innocence] as true when considering whether dismissal was appropriate." The petitioner further argues that the court's summary dismissal of his third petition was procedurally improper because, upon his assertion of a claim of actual innocence in his self-represented third petition, he was entitled at a minimum to "counsel and . . . an opportunity to amend the petition before any hearing on dismissal can take place." The petitioner asserts that the court's dismissal of the third petition under Practice Book § 23-29, prior to issuing the writ, was procedurally improper. According to the petitioner, "[p]reliminary sua sponte dismissal is never appropriate under Practice Book § 23-29, especially where a petitioner makes a claim of innocence." (Emphasis omitted.)

Moreover, arguing, in part, that the claim of actual innocence in the third petition distinguished it from the second petition, the petitioner argues that the court improperly relied on the doctrine of res judicata. Finally, the petitioner argues that, even if the third petition was identical to the second petition, the court erroneously relied on the appellate stay provision, codified in Practice Book § 61-11, in dismissing the petition.

"Whether a habeas court properly dismissed a petition for a writ of habeas corpus presents a question of law over which our review is plenary." *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548, 553, 223 A.3d 368 (2020). We will focus our analysis on the petitioner's argument that the court's dismissal of his third petition under Practice Book § 23-29 was procedurally improper.

It is necessary to begin our analysis by focusing on the basis of the habeas court's dismissal, which was the result of its interpretation of the third petition. The court stated that the second and third petitions were "identical" and that the third petition was an "exact copy" of the second petition. This interpretation of the third petition was incorrect. It appears that the court failed to note, as we discussed previously, that the statement "I am innocent" was added to the third petition. The court also stated that the third petition failed to state a claim on which relief could be granted because the petitioner's appeal from the "identical" second petition was pending. Because the petitions were not identical, the court's characterization of the third petition, and thus its reliance on Practice Book § 61-11, was incorrect.

The petitioner argues that he adequately pleaded a claim of actual innocence and that the claim constituted a claim on which relief could be granted. The petitioner and the respondent disagree with respect to whether

the addition of the statement "I am innocent" to the third petition was sufficient to plead a claim of actual innocence, a claim on which relief could be granted.[19] "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised." (Internal quotation marks omitted.) *Abdullah* v. *Commissioner of Correction*, 123 Conn. App. 197, 202, 1 A.3d 1102, cert. denied, 298 Conn. 930, 5 A.3d 488 (2010).

This court has explained that, "[t]o obtain relief through a habeas petition, the petitioner *must plead facts that, if proven, establish that the petitioner is entitled to relief.* . . . Practice Book § 10-1 . . . makes this pleading requirement clear: Each pleading shall contain a plain and concise statement *of the material facts on which the pleader relies, but not of the evidence by which they are to be proved*, such statement to be divided into paragraphs numbered consecutively, each containing as nearly as may be a separate allegation. . . . Further, if the [petitioner] allege[s] separate and distinct [claims], [he] should . . . [assert] them in separate counts pursuant to Practice Book § 10-26. The burden is on [the petitioner] to plead his case clearly and not to expect the court or his opposing counsel to have to wade through a poorly drafted [petition] to glean from it the [petitioner's] theories of relief. . . .

"Our case law has recognized only one situation in which a court is not legally required to hear a habeas petition [before dismissing the petition]. . . . Specifically, [i]f a previous [petition] brought on the same grounds was denied, the pending [petition] may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing. . . . Although [b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims . . . practical considerations suggest that a habeas court is not legally required to hear a habeas petition that itself is legally infirm." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Coleman* v. *Commissioner of Correc-*

*tion*, 137 Conn. App. 51, 57, 46 A.3d 1050 (2012).

Thus, a petitioner's pleading burden is to plead *material facts* that entitle him to relief. See, e.g., *Dinham* v. *Commissioner of Correction*, 191 Conn. App. 84, 93–94, 213 A.3d 507 (habeas court properly dismissed claim pursuant to Practice Book § 23-29 for failure to state claim on which relief could be granted because "[t]he petitioner failed to plead in his . . . petition any factual basis upon which his claim relies"), cert. denied, 333 Conn. 927, 217 A.3d 995 (2019). In the context of a claim of actual innocence, the material facts must give rise to a belief that the petitioner will present at trial affirmative proof that he did not commit the crime. As our Supreme Court has explained, "[h]abeas corpus relief in the form of a new trial on the basis of a claim of actual innocence requires that the petitioner satisfy the two criteria set forth in *Miller* v. *Commissioner of Correction*, [242 Conn. 745, 747, 700 A.2d 1108 (1997)]. Under *Miller*, the petitioner [first] must establish by clear and convincing evidence that, taking into account all of the evidence—both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial—he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom . . . no reasonable fact finder would find the petitioner guilty of the crime. Id.

"As to the first prong, we emphasized in *Miller* that the clear and convincing standard . . . is a very demanding standard and should be understood as such, particularly when applied to a habeas claim of actual innocence, where the stakes are so important for both the petitioner and the state. . . . [That standard] should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory. . . . [The standard requires] extraordinarily high and truly persuasive demonstration[s] of actual innocence. . . .

"Moreover, actual innocence [must be] demonstrated by *affirmative proof* that the petitioner did not commit the crime. . . . Affirmative proof of actual innocence is that which might tend to establish that the petitioner could not have committed the crime . . . that a third party committed the crime, or that no crime actually occurred. . . . Clear and convincing proof of actual innocence does not, however, require the petitioner to establish that his or her guilt is a factual impossibility. . . . In part for these reasons, we emphasized in *Miller* that truly persuasive demonstrations of actual innocence after conviction in a fair trial have been, and are likely to remain, extremely rare." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Bowens* v. *Commissioner of Correction*, 333 Conn. 502, 518–19, 217 A.3d 609 (2019).

Also, we observe that "[t]his court has stated that [a] claim of actual innocence must be based on newly discovered evidence. . . . This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence." (Internal quotation marks omitted.) *Outing* v. *Commissioner of Correction*, 190 Conn. App. 510, 540, 211 A.3d 1053, cert. denied, 333 Conn. 903, 214 A.3d 382 (2019), cert. denied, U.S. , 140 S. Ct. 1166, 206 L. Ed. 2d 212 (2020).

Mindful of these principles, we look more closely at the third petition. The first point at which the petitioner inserted the statement "I am innocent" was in box five of the petition, in which he also alleged as reasons his conviction was illegal: "[W]as not given appropriate interpreter (Spanish); jury was forced to find me guilty; there is no physical evidence supporting unstable statements; contradictory statements." The second point at which the petitioner inserted the statement "I am innocent" was in box six of the petition, in which he also alleged as a reason his "incarceration/sentence" was illegal: "Because of misconduct of all counsel involved in my case: Intentional, malicious, prejudicial, discriminatory (but is not limited to)." The statement "I am innocent," when viewed in isolation, is ambiguous. It may be viewed as a bare conclusory statement of the petitioner's belief in his innocence and not necessarily as an allegation of material fact that, if proven, would entitle the petitioner to relief on the ground of actual innocence. Without more, the statement does not suggest that affirmative proof exists that the petitioner did not commit the crime. Moreover, the allegations that precede the statement "I am innocent" similarly lack any reference to material facts in support of a claim of actual innocence. To the contrary, the other allegations reflect the petitioner's belief that, for several reasons, he should not have been convicted, but none of these reasons rises to affirmative proof that he could not have committed the crime, that a third party committed the crime, or that no crime actually occurred.[20] It bears repeating that "[a]ctual innocence is not demonstrated merely by showing that there was insufficient evidence to prove guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *Carmon* v. *Commissioner of Correction*, 178 Conn. App. 356, 371, 175 A.3d 60 (2017), cert. denied, 328 Conn. 913, 180 A.3d 961 (2018).

Our interpretation of the newly inserted language in the third petition is based on the lack of material facts contained therein in support of a claim of actual innocence; it is not the result of the petitioner's failure to use the specific phrase "actual innocence." It is well settled that courts do not interpret pleadings so to require the use of talismanic words and phrases. See,

e.g., *Delgado* v. *Commissioner of Correction*, 114 Conn. App. 609, 616, 970 A.2d 792, cert. denied, 292 Conn. 920, 974 A.2d 721 (2009). "In Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 778, 905 A.2d 623 (2006). For the reasons we have discussed, the third petition, when construed broadly and realistically, does not clearly raise a claim of actual innocence.

Having interpreted the allegation in the third petition at issue in this claim, we turn to the procedural argument advanced by the petitioner, namely, that the court erred in relying on Practice Book § 23-29 in its preliminary review of the third petition prior to issuing the writ. The petitioner repeatedly refers to the fact that he filed the third petition in a self-represented capacity. He also asserts that the state supplied form that he utilized in drafting the third petition "does not include any questions about the nature of any evidence to support a claim of actual innocence, or question when such evidence was discovered. [Self-represented] litigants such as the petitioner must simply do the best they can to communicate their claims of innocence and await the appointment of counsel for assistance in presenting their claims in a legally sufficient manner."[21] The petitioner urges us to afford him additional leeway in pleading his claim because he did so in a self-represented capacity.[22]

With respect to the petitioner's procedural argument, our Supreme Court's recent decision in *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 548, is instructive. In *Gilchrist*, our Supreme Court clarified the proper role of the habeas court in screening habeas petitions as well as the proper application of Practice Book §§ 23-24[23] and 23-29, both of which authorize the habeas court to dismiss a habeas petition on the basis of pleading deficiencies. Id., 553–63. The court explained that, "[b]*efore* [a habeas] petition is served on the respondent, the petitioner is required to file the petition in court for review by a judge. The current review procedure is set forth in Practice Book § 23-24 (a), which requires the judicial authority to 'promptly review any petition for a writ of habeas corpus to determine

*whether the writ shall issue.*' . . . The rule goes on to instruct that '[t]he judicial authority shall issue the writ unless it appears that: (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available.' Practice Book § 23-24 (a). If any of these three enumerated circumstances exist, then the writ never issues in the first place, and the judicial authority is required 'to notify the petitioner [that] it declines to issue the writ.' Practice Book § 23-24 (b). Section 23-24 thus reverses the usual sequence followed in the ordinary civil case; the habeas petition is first filed with the court, and the writ issues and service of process occurs only if the court determines, after a preliminary review of the petition, that the petition pleads a nonfrivolous claim within the court's jurisdiction upon which relief can be granted." (Emphasis in original; footnote omitted.) Id., 556–57.

After discussing the proper application of Practice Book § 23-24 in a habeas court's preliminary review of a habeas petition prior to the issuance of the writ of habeas corpus and prior to the commencement of the action, the court explained that Practice Book § 23-29, the provision on which the habeas court in the present case relied in dismissing the third petition, "contemplates the dismissal of a habeas petition *after the writ has issued* on any of the enumerated grounds. It serves, roughly speaking, as the analog to Practice Book §§ 10-30 and 10-39, which, respectively, govern motions to dismiss and motions to strike in civil actions. It is true that § 23-29 states that the judicial authority may take action under its authority 'at any time,' but the 'time' it references necessarily is defined by the time at which the rule itself becomes operative which is *after* the habeas court issues the writ and the action has commenced." (Emphasis added.) Id., 561.

As we have explained, in the present case, the court dismissed the third petition under Practice Book § 23-29 during its preliminary consideration of the petition and prior to issuing the writ.[24] Thus, *Gilchrist* leads us to conclude that the court's reliance on § 23-29 was procedurally improper. Instead, if the court concluded that any of the reasons set forth in Practice Book § 23-24 applied, it should have declined to issue the writ rather than dismissing the petition. We are not, however, persuaded that the proper remedy is to remand the case to the habeas court with direction to render judgment declining to issue the writ.[25] On the basis of its erroneous determination that the third petition was an exact copy of the second petition, the court concluded that it lacked jurisdiction to consider the third petition, the third petition failed to state a claim on which relief could be granted, and res judicata precluded it from affording the petitioner relief. Although, for the reasons set forth previously, we are not persuaded that the new allegations in the third petition sufficiently state a claim of actual innocence, as the

petitioner argues, we nonetheless conclude that the allegations concerning innocence, set forth by a self-represented petitioner, are ambiguous and may constitute the petitioner's attempt to present a claim of actual innocence. Although the petitioner has not yet alleged material facts that would give rise to a claim of actual innocence, *Gilchrist* guides us to the conclusion that the writ should issue, and, following the appointment of counsel, the petitioner, prior to presenting evidence in support of his claim, will have the opportunity to rectify pleading deficiencies that are raised by the respondent or the court.

This remedy is consistent with *Gilchrist*, in which our Supreme Court provided additional insight into the proper screening function that the habeas court should apply in determining whether to issue the writ: "To be clear, the screening function of Practice Book § 23-24 plays an important role in habeas corpus proceedings, but it is intended only to weed out obviously and unequivocally defective petitions, and we emphasize that [b]oth statute and case law evince a strong presumption that a petitioner for a writ of habeas corpus is entitled to present evidence in support of his claims. . . . Screening petitions prior to the issuance of the writ is intended to conserve judicial resources by eliminating obviously defective petitions; it is not meant to close the doors of the habeas court to justiciable claims. Special considerations ordinarily obtain when a petitioner has proceeded [as a self-represented party]. . . . [I]n such a case, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed. . . . The justification for this policy is apparent. If the writ of habeas corpus is to continue to have meaningful purpose, it must be accessible not only to those with a strong legal background or the financial means to retain counsel, but also to the mass of uneducated, unrepresented prisoners. . . . Thus, when borderline cases are detected in the preliminary review under § 23-24, the habeas court should issue the writ and appoint counsel so that any potential deficiencies can be addressed in the regular course after the proceeding has commenced." (Citations omitted; internal quotation marks omitted.) Id., 560–61.

The judgment in Docket No. AC 42466 is affirmed; the appeal in Docket No. AC 42618 is dismissed in part with respect to the denial of the motion for permission to file a late amended petition for certification to appeal and for reconsideration, the judgment dismissing the petitioner's petition for a writ of habeas corpus is reversed and the case is remanded with direction to issue the writ of habeas corpus.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to use the petitioner's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] This court has previously set forth the factual basis for the conviction as follows: "On the evening of August 12, 2001, the [petitioner] returned home from work. His daughter, the victim, who had become eight years old on the previous day, was sleeping in the living room. The [petitioner] inserted his finger into the victim's vagina two times. The victim later told her mother, who did not live with the [petitioner], what had happened and said that her vaginal area had become painful. Her mother took her to a physician, who discovered that the victim had a vaginal injury consistent with digital penetration." *State* v. *Antonio A.*, 90 Conn. App. 286, 289, 878 A.2d 358, cert. denied, 275 Conn. 926, 833 A.2d 1246 (2005), cert. denied, 546 U.S. 1189, 126 S. Ct. 1373, 164 L. Ed. 2d 81 (2006).

[2] General Statutes § 52-470 provides in relevant part: "(d) In the case of a petition filed subsequent to a judgment on a prior petition challenging the same conviction, there shall be a rebuttable presumption that the filing of the subsequent petition has been delayed without good cause if such petition is filed after the later of the following: (1) Two years after the date on which the judgment in the prior petition is deemed to be a final judgment due to the conclusion of appellate review or the expiration of the time for seeking such review; (2) October 1, 2014; or (3) two years after the date on which the constitutional or statutory right asserted in the petition was initially recognized and made retroactive pursuant to a decision of the Supreme Court or Appellate Court of this state or the Supreme Court of the United States or by the enactment of any public or special act. For the purposes of this section, the withdrawal of a prior petition challenging the same conviction shall not constitute a judgment. The time periods set forth in this subsection shall not be tolled during the pendency of any other petition challenging the same conviction. Nothing in this subsection shall create or enlarge the right of the petitioner to file a subsequent petition under applicable law.

"(e) In a case in which the rebuttable presumption of delay under subsection . . . (d) of this section applies, the court, upon the request of the respondent, shall issue an order to show cause why the petition should be permitted to proceed. The petitioner or, if applicable, the petitioner's counsel, shall have a meaningful opportunity to investigate the basis for the delay and respond to the order. If, after such opportunity, the court finds that the petitioner has not demonstrated good cause for the delay, the court shall dismiss the petition. For the purposes of this subsection, good cause includes, but is not limited to, the discovery of new evidence which materially affects the merits of the case and which could not have been discovered by the exercise of due diligence in time to meet the requirements of subsection . . . (d) of this section. . . ."

[3] General Statutes § 52-470 (f) provides in relevant part: "Subsections (b) to (e), inclusive, of this section shall not apply to (1) a claim asserting actual innocence . . . ."

[4] In question seven on the state supplied form, the petitioner was asked to specify whether any of the claims raised in this petition had "been previously raised at trial, direct appeal or in any previous habeas petition . . . ." Despite having filed the second petition, the petitioner checked the box marked, "No."

[5] Practice Book § 23-29 provides: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that: (1) the court lacks jurisdiction; (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition; (4) the claims asserted in the petition are moot or premature; (5) any other legally sufficient ground for dismissal of the petition exists."

[6] The court, however, granted the petitioner's request for counsel.

[7] The proposed amended petition set forth the following legal claims: "(1) The habeas court erred by dismissing the petitioner's [self-represented third] petition as [being] 'identical' to the [second] petition that was dismissed as untimely . . . because the [self-represented third] petition included claims of innocence that were not included in the [self-represented second] petition . . . .

"(2) The habeas court erred by dismissing without a hearing, counsel, or the opportunity to amend, a [self-represented] petition that includes a plain assertion of actual innocence . . . .

"(3) The habeas court erred by dismissing the [self-represented third] petition on the grounds that the petition fails to state a claim upon which

this court could grant relief . . . .

"(4) The habeas court erred by concluding that the petitioner's claims and/or finding of untimeliness in [connection with the second petition] were subject to res judicata; and,

"(5) The habeas court erred by relying upon the automatic stay provisions of Practice Book § 61-11 in dismissing the petitioner's amended petition."

[8] As a preface to his analysis of this claim, the petitioner states that the court violated his right to due process under the federal and state constitutions by virtue of the procedures it followed and its ultimate dismissal of his second petition. The petitioner's appellate brief, however, does not contain an analysis of the claim under the constitutional provisions he has cited in his brief. Accordingly, this aspect of the claim is deemed abandoned. A bald assertion of error without more is insufficient to warrant appellate review. See, e.g., *State* v. *Franklin*, 20 Conn. App. 96, 99, 563 A.2d 1383 (1989).

[9] According to the petitioner, it is imperative that such a representation by counsel "pause the show cause proceedings" because (1) "the state provided [self-represented] petition for a writ of habeas corpus form does not provide a place for petitioners to indicate that they wish to raise a claim of actual innocence" and (2) "without the ability of habeas counsel to make a representation as an officer of the court that an actual innocence claim may be forthcoming, serious ethical difficulties arise." With respect to the second consideration, the petitioner argues that it was "problematic" for counsel to state to the court that the petitioner has expressed his belief in his innocence and that she had not fully investigated the claim. The petitioner argues that, "[f]or obvious reasons, this is problematic in that it not only requires privileged communications to be offered to avoid dismissal, [but] it also exposes strategic matters that should be protected until the petitioner files an amended petition and proceeds to a trial on the merits of his claims."

These considerations are unpersuasive. For the reasons set forth in our analysis, our proper focus is on the claims raised in the petition before the habeas court, whether the petitioner has demonstrated good cause for the delay in bringing the petition, and whether additional time was necessary to investigate the cause of the delay in filing the claims in the petition, not on whether counsel needed additional time to investigate whether other claims not alleged in the petition might exist.

[10] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[11] The petitioner also argues that the court's subsequent dismissal of his third petition, which we address in part II of this opinion, "displays the error of the habeas court in denying the petitioner a further opportunity to investigate and respond to the show cause order because . . . between the two proceedings in this matter . . . the habeas court has essentially closed the courthouse doors to the petitioner's claim of innocence, which is expressly prohibited by . . . § 52-470 (f)." The petitioner has failed to demonstrate how the court's dismissal of the third petition is relevant to our analysis of its judgment dismissing the second petition.

[12] The "[o]ffer of [p]roof" consisted of sixteen proposed findings in support of a determination by the habeas court that good cause existed for the petitioner's delay in bringing the second petition. The proposed findings are generally related to the procedural history of his second petition, the petitioner's health issues, and the effects of those health issues.

[13] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[14] Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

[15] We observe that, in his appellate brief, the petitioner cites case law governing motions for reargument and argues that this court should "remand this matter with instructions to grant the motion to *reargue* . . . ." (Empha-

sis added.)

[16] We note that, even if the court improperly treated the motion for reconsideration as a motion to open, the petitioner has failed to demonstrate that he was thereby prejudiced. Relying on the authorities previously set forth in our analysis of this claim, we observe that a motion for reargument or reconsideration does not afford an opportunity to present new evidence. The purpose of the petitioner's motion, regardless of how it was titled, was not based on a misapprehension of law or fact but was to establish good cause by means of facts that were known to the petitioner at the time of the hearing, but not presented to the court at the hearing. Accordingly, the petitioner was not entitled to relief even if the court should have treated the motion in accordance with the manner in which he titled it, as a motion for reconsideration..

[17] As stated previously in this opinion, on February 20, 2019, the petitioner filed the present appeal from the denial of his petition for certification to appeal and the judgment dismissing the third petition.

[18] See footnote 5 of this opinion.

[19] As stated previously in this opinion, in seeking certification to appeal, the petitioner set forth as a ground for the appeal whether the court properly determined that the third petition failed to state a claim on which relief could be granted.

[20] In box seven of the form, which pertained to whether the claims raised in the petition had been raised previously, the petitioner wrote: "New evidence: Prior counsel did not present everything he was shown and or told or support [the petitioner] when the judge himself forced the jury to get a conviction; ineffective assistance of defense counsel; conflict of interest across the board (state attorney, defense attorney, judicial authority)." Although this response mentioned "[n]ew evidence," it cannot reasonably be construed to refer to newly discovered evidence or material facts concerning affirmative proof that the petitioner did not commit the crime.

[21] Any alleged deficiency with respect to the state supplied form that the petitioner utilized to file his third petition does not alter our analysis of what the petitioner actually stated in the petition. Nonetheless, we observe that the state supplied form afforded the petitioner an opportunity to state "other" reasons in addition to those suggested on the form. The form also stated in relevant part: "*You must state facts supporting each claim.* Use additional pages if necessary." (Emphasis added.)

[22] Indeed, in his reply brief, the petitioner states that his self-represented status "is more than enough reason to not hold [him] to a requirement that he properly plead all of the elements and evidence of his innocence claim on a state provided form that does not include any specific place for such answers."

[23] Practice Book § 23-24 provides: "(a) The judicial authority shall promptly review any petition for a writ of habeas corpus to determine whether the writ should issue. The judicial authority shall issue the writ unless it appears that: (1) the court lacks jurisdiction; (2) the petition is wholly frivolous on its face; or (3) the relief sought is not available.

"(b) The judicial authority shall notify the petitioner if it declines to issue the writ pursuant to this rule."

[24] The manner of dismissal in this case is virtually identical to that in *Gilchrist*, in which our Supreme Court concluded that the habeas court dismissed the petition before issuing the writ. See *Gilchrist* v. *Commissioner of Correction*, supra, 334 Conn. 563. In both cases, the petition was docketed in the habeas court, the court granted the petitioner's application for a waiver of fees and costs, and then dismissed the petition within a week of when it was filed, without any indication that the petition was served on the respondent. See id., 551–52.

[25] We recognize, and the respondent argues, that a petitioner does not invoke the jurisdiction of the habeas court unless and until he states a claim on which relief may be granted. As this court has stated, "a petition that fails to state a claim would be subject to dismissal under [Practice Book § 23-24 (a) (1)] for lack of jurisdiction." *Coleman* v. *Commissioner of Correction*, 111 Conn. App. 138, 140 n.1, 958 A.2d 790 (2008), cert. denied, 290 Conn. 905, 962 A.2d 793 (2009). Nonetheless, in light of our conclusion that the third petition is ambiguous in terms of the allegation of innocence, we conclude that the proper remedy is for the writ to issue and for any pleading deficiencies to be addressed following the issuance of the writ.